Chapman
*v.*
Gillet.

a bill is found, and returned to the court, the analogy commences between bills of indictment, and complaints to justices of the peace. Then the subject of the charge has come regularly before a court authorized to cause the accused to be arrested, in one case, for the purpose of trial, in the other, for examination.

---

## CHAPMAN *against* GILLET.

Words charging a person with having given false evidence under an oath administered by a justice of the peace,

THIS was an action of slander. In one of the counts, the words were charged as follows: " That the defendant uttered and published, in the hearing of sundry citizens of this state, of and concerning the plaintiff, the following false, scandalous and defamatory words, *viz. Deacon Chapman* (meaning the plaintiff) *is guilty of the crime of perjury :*

before a church convened for the purpose of administering discipline among its members, are actionable, without an averment and proof of special damage.

The taking of a false oath, wilfully and corruptly, in any case where the administration of an oath is lawful, is perjury at common law.

*he has taken a false oath, and I can prove it.* And the defendant, further addressing himself to the persons present, continued, *that at a church-meeting, in the present month of June, charges were made and presented against one of the members of the Presbyterian church in the town of Granby for unchristian conduct. To support them,* continued the defendant, *the Deacon* (meaning the plaintiff) *was called upon, was sworn, and testified upon said hearing, and he perjured himself, and was guilty of false swearing.*" The plaintiff averred, that there was a hearing and enquiry before said church; that there were sundry charges exhibited against a member thereof; and that he, the plaintiff, was called upon, was duly sworn, and testified at said hearing.

The cause was tried at *Hartford, September* term, 1816, before *Swift,* Ch. J. and *Goddard* and *Hosmer,* Js.

On the trial, the only words proved to have been spoken by the defendant were words charging the plaintiff with having taken a false oath before a meeting of the members of the church in an ecclesiastical society in *Granby,* acting, according to the usages of this state, as an ecclesiastical tribunal for the administration of church discipline. The defendant contended, that the words proved were not of themselves actionable; and he requested the court so to instruct the jury. But the court instructed the jury, that the words proved were actionable of themselves. The plaintiff having obtained a verdict, the defendant moved for a new trial on the ground of a misdirection. This motion was reserved for the consideration and advice of the nine Judges.

*Edwards* and *Sherman,* in support of the motion, stated the question to be, whether a person who testifies falsely before an ecclesiastical tribunal, is indictable for perjury; and then contended, that in order to make a false oath the subject of an indictment for perjury, it must be taken before a tribunal having *civil power,* and must go to affect the *civil rights* of the party. 1 *Hawk. P. C. c.* 69. *s.* 3. A church, in this state, has no civil power; it is merely a voluntary association of individuals; and a false oath before a meeting of its members for discipline, can affect the civil rights of no one.

*T. S. Williams* and *W. W. Ellsworth*, contra, admitted, that if the taking of a false oath before a church-meeting, cannot be perjury, the words in question were not of themselves actionable ; but contended, that in all cases in which the law recognizes the administration of an oath, it will make that oath efficacious, and the taking of a false oath is perjury. That the law recognizes the administration of an oath before an ecclesiastical tribunal, is evident from these considerations. First, it has been the immemorial practice of these respectable tribunals to receive the testimony of witnesses *under oath ;* and the oaths which have been administered in such cases, are innumerable. But the administration of an oath not recognized by law is unlawful. Secondly, an oath, in the case under consideration, is necessary to the investigation of truth, and the attainment of justice, as well as to the advancement of the best interests of religion.

The taking of a false oath before any court which the law will take cognizance of, is perjury ; as the *court of requests,* or *the consistory court. Brooke* v. *Doughty, Cro. Eliz.* 135. *Plaice* v. *Howe, Cro. Eliz.* 185. A church is a body, whose existence and powers, as such, are recognized by the laws of this state. Being " in full communion with the church" is a qualification for voting in a society meeting equivalent to owning a freehold rated at nine dollars, or personal property rated at 134 dollars. *Stat. tit.* 151. *c.* 1. *s.* 7. and *tit.* 114. *c.* 1. *s.* 2.

Though no decision upon the precise point in controversy is to be met with, yet it has been decided by the superior court, and the supreme court of errors, in this state, that the taking of a false oath before an arbitration is perjury. *Lyman* v. *Wetmore, Supreme Court of Errors, June* term, 1795.*(a)*

(a) LYMAN *against* WETMORE:

IN ERROR.

THIS was an action of slander brought by *Wetmore* against the plaintiff in error.

It was alleged in the declaration, that on or about the 22d day of *May* 1793, one *Thomas Lyman* and the defendant in the original action, submitted certain matters of controversy subsisting between them, to the determination and

*New-Haven,*
November,
1816.

Chapman
*v.*
Gillet.

**SWIFT,** Ch. J. The question in this case is, whether to charge a man with perjury before an ecclesiastical tribunal, is actionable, without alleging special damages.

*Christianity* is a part of the law of the land. We have no establishment of any denomination of christians; but all have by law the power of supporting and conducting public worship in a manner conformable to their sentiments. From time immemorial, it has been the usage of churches, of every denomination, to have ecclesiastical tribunals, who are invested with certain powers for their government, and the administration of discipline among their members. These are necessary, not only for the promotion of religion, but for the peace and well-being of civil society. In the exercise of their powers, these tribunals, by their sentences, can directly affect the spiritual rights of their members, and indirectly their civil rights. They may be said to be courts where

award of *William Henderson, Richard Alsop* and *Lamberton Cooper,* who were mutually chosen by them, as arbitrators; and that in the course of the enquiry before the arbitrators, it became important, and material, to ascertain in what proportion *Thomas Lyman* was interested or concerned in certain bricks manufactured by him and the original defendant, and one *Abner Benedict;* to prove which, the plaintiff was called as a witness; and to which point he did testify before the arbitrators, being duly sworn according to law before *Samuel W. Dana,* Esq. a justice of the peace; and that he did before the arbitrators, declare the truth relating to the matter in question; and that the defendant, well knowing the premises, but contriving, and maliciously intending to destroy the plaintiff's good name, and to expose him to the shame and damage of a public prosecution for the crime of perjury, did, on the day and year before mentioned, openly and publickly, in the hearing and presence of divers good people of this state, utter and speak, of and concerning the plaintiff, the following false, scandalous and slanderous words, *viz.* " *Wetmore,* what you have said to day before the arbitration, was a lie."

The cause was tried before the superior court, at *Haddam, December* term, 1794. Issue was joined on the plea of *not guilty;* and the jury returned a verdict for the plaintiff, with 18*l.* 0*s.* 0*d.* lawful money, damages. The court accepted the verdict; and the defendant moved in arrest of judgment, on the ground of the insufficiency of the declaration. The declaration was adjudged sufficient; and judgment was entered for the plaintiff accordingly.

To reverse this judgment, the defendant brought a writ of error before the Supreme Court of Errors, *June* term, 1795.

*Dana* for the plaintiff in error.

*Hosmer* for the defendant in error.

BY THE COURT,

The judgment was affirmed.

*New-Haven,*
November,
1816.

Chapman
*v.*
Gillet.

justice is judicially administered. In the discharge of their duties, it is necessary that they should investigate the truth of facts by the testimony of witnesses. To enable them to do this, it is essential that they should have the power to examine witnesses on oath ; and it is understood to have been the general practice for magistrates to administer oaths in such cases.

Here, then, are well known tribunals of ecclesiastical jurisdiction, who possess certain powers by common consent, and immemorial usage, sanctioned by law, in the exercise of which it is necessary and proper for them to enquire into the truth of facts by testimony, and before whom it is customary and proper for the civil magistrate to administer oaths. It is a sound principle, that where an oath can lawfully be administered, there false swearing shall be deemed perjury. There can be no reason to confine it to tribunals only, whose decisions can affect *civil* rights ; other rights may be equally important, and equally deserving protection. None will say, that it is unlawful or improper to administer an oath before an ecclesiastical tribunal ; for otherwise witnesses will not be under the obligation of an oath to speak the truth at a time when their testimony may deeply affect the rights and the character of individuals. It appears to me, that justice and policy require, that these tribunals, acting within their proper jurisdiction, should have the same power as civil courts to investigate the truth ; that the parties who may be subjected to their discipline, should be protected against false accusations, by the punishment of witnesses who swear falsely ; and that witnesses, who are charged falsely with perjury, in such cases, should have the means of defending their character by an action against the slanderer. To deny this would be to encourage perjury and slander. No man could consider his character safe, as a party, or witness, before such tribunals ; and it would tend greatly to lessen their respectability and usefulness to have it published to the world, that they are viewed in so unimportant a light by courts of law that perjury might be committed before them with impunity, and their witnesses slandered without redress.

But it is said, that we are encroaching on the province of the legislature ; that we are making, not expounding law ; and are adding a new offence to the criminal code ; and a new head in the chapter of *actionable words*. But this is no

innovation : it is only extending and applying principles already known to new and analogous cases ; a power which has ever been exercised by judicial tribunals, and which has produced the greatest improvements in jurisprudence. What would have been our condition, if judges at the outset had been checked and restrained, by this timid doctrine, from the exercise of such an important power ! We should yet have been in the infancy of black-letter learning ; and causes might have been decided by the ordeal, or wager of battle.

It is a first principle, founded in the nature and fitness of things, that swearing falsely, when under an oath lawfully administered, is a crime. At first, perjury was confined to false swearing in a court of record ; it was then extended to courts not of record. It has been decided in this Court, that to charge a man with perjury before arbitrators, is actionable slander ; and now by analogy, we extend the same principle to ecclesiastical tribunals. Here no new principle is introduced. We only apply a well known principle to similar cases. The same objection might have been made to extending it to the case of arbitrators ; but no one will now question the propriety and correctness of that decision ; and I have no doubt the doctrine now promulgated will meet with the same general approbation.

I would not advise a new trial.

TRUMBULL, J. was of the same opinion.

EDMOND, J. I hope I shall not be considered as having a disposition to impair, in the slightest degree, the privileges of any of our churches, or to encourage slanders of any description, by giving an opinion in this case at variance with the opinion already expressed by some of my brethren. To protect the rights of the church, and indeed the rights of all, the surest and safest mode is, to adhere to the law, as far as it can be ascertained. Where that is known, there is a sure guide ; and questions as to what would be best, or most expedient, may be left to be discussed and settled, by those entrusted with the power of legislation. What, then, is the law as applicable to the words charged to have been spoken in the declaration ? Are they actionable of themselves ; or, in other words, do they import such slander on the face of them, that the law will presume damage, without an averment

*New-Haven*,
November,
1816.

Chapman
*v.*
Gillet.

*New-Haven,*
November,
1816.

Chapman
*v.*
Gillet.

or proof that damage has happened, on the ground that it probably may ? If so, they must be such as to endanger the plaintiff in law ; that is to say, they must amount to the imputation of a crime, for which the plaintiff would, if true, be liable to be indicted and punished. What is the crime or offence here charged on the plaintiff ? " That he took a false oath before a church meeting." If to take a false oath before a church meeting is an indictable offence, it must be on the ground that it is perjury, at common law, punishable by fine, imprisonment, &c. and incapacity thereafter to be a witness ; or perjury punishable by our statute.(a)

That it cannot be perjury within the statute must be admitted, unless it can be shewn, that a church meeting is, in legal contemplation, not only a court with judicial powers, but a *court of record*. The statute extends to no other perjury, than that which may be committed by a witness in giving " his deposition in any court of record, or upon examination" without the unlawful procurement of others, or who, by the unlawful and corrupt procurement of others, shall " commit wilful or corrupt perjury in any matter or cause whatever *depending*, or that shall be *depending in suit and variance, by any writ, action, bill, complaint or information, in any court of record.*" That every, or any church meeting, whatever the form of its constitution may be, is a court of record, I am not prepared to say. The General Court or Assembly, and " *they only*" have power " *to institute and style judicatories and officers*, as they shall see necessary for the good government of the state."(b) This power has been exercised as far as it has hitherto been deemed expedient. Judicatories and officers have been instituted, jurisdiction assigned, and powers granted to them, every way adequate, in the opinion of the Assembly, to a due administration of justice. In this distribution and delegation of power and office, we find no mention of a church, or church meeting, as constituting a court or judicial tribunal, with authority to hear, try and determine any matter or controversy between parties, or among their own members of any description, either in relation to their civil rights, their doctrines, or their discipline.

Of the wisdom or policy of such an omission, it is not my province to decide. The fact, however, evinces a total des-

(a) 1 *Stat. Conn. tit.* 127.      (b) 1 *Stat. Conn. tit.* 42. *c.* 1. *s.* 4.

titution in church meetings of all the powers incident to courts or officers entrusted with the execution of the laws ; and, at the same time, furnishes some evidence of the delicate nature of the subject, and the inexpediency of legislative interference.

If, then, in the distribution of judicial powers, by the General Court or Assembly, who alone have power to grant it, churches or church meetings have received no share, have been vested with no authority judicially to decide any question of law, or matter of controversy, either of a civil or criminal nature, or to do any *official act* required to be done, and necessary to a due execution of the laws, they must be considered as destitute of every requisite essential to a court. It follows, that a false oath voluntarily taken, and no other than a voluntary oath can be taken before them, as they possess no compulsory powers, although a gross immorality, is no more the crime of perjury punishable by the statute, than a false oath voluntarily taken in any other place, before any number of persons associated by covenant or agreement to pursue any measure for their common benefit, or general good ; and to say of a person, he took a false oath before such a meeting, cannot expose the person of whom this is spoken to any proceeding on an indictment founded on the statute ; and such words are therefore not actionable of themselves, on that account.

It remains to be enquired whether the taking a false oath before a church meeting is perjury by the common law?

If the observations already submitted are correct, very little, if any, doubt can remain as to the answer that must be given to this question. No definition of perjury by the common law, will be found so long, or so broad, as to embrace, or even countenance the position, that to take a false oath before a church meeting, (such as has been described) is perjury, in any sense of the word recognized by the law. In 2 *Hawk. P. C.* 83. it is said, " perjury by the common law seemeth to be a wilful false oath, by one *lawfully required* to depose the truth in any proceedings in a *court of justice,*" &c. *Blackstone* in his *Commentaries,* (*vol.* iv. *p.* 136.) treating of offences against public justice, says, " the next offence against public justice, is, when *the suit is past its commencement,* and come *to trial.* And that is the crime of wilful and corrupt perjury, which is defined by Sir *Edward Coke* to be

Chapman
*v.*
Gillet.

a crime committed when a *lawful oath* is administered, in some *judicial proceeding,* to a person who swears *wilfully, absolutely,* and *falsely,* in a matter *material* to the issue or point in question. The *law* takes *no* notice of any *perjury* but such as is committed *in some court of justice having power to administer an oath ;* or before some magistrate or proper officer, invested with a *similar authority,* in some *proceedings relative to a civil suit,* or a *criminal prosecution ;* for it esteems all others unnecessary, at least, and therefore will not punish the breach of them."

But recurrence to authorities is unnecessary. No precedent has been shewn in support of the proposition ; and none, I believe, can be found. The case of *Lyman* v. *Wetmore* does not bear on the point in question. There is no analogy between the powers, duties and offices of arbitrators, and church meetings. The former are vested with powers to determine *civil ri    ,* and are sworn, " faithfully to administer justice between the parties in the case submitted or referred, according to law."(*a*) Not so with the latter. They have no uniform usage ; they do not act under the common law rules in relation to the admission and examination of witnesses, nor consider them as obligatory ; they are bound by no oath prescribed by law in relation to their proceedings ; nor are they entrusted, in any respect, as a court of law, with the administration of justice.(*b*)

But church members, it is said, have some civil privileges, which others do not possess. If of full age, and in full communion with the church, they are entitled to vote in society meetings. (*Tit.* 151. *c.* 1. *s.* 7. and *tit.* 114. *c.* 1. *s.* 2.) By excommunication, a church meeting may deprive them of this civil right. It is, however, to be observed, that the privilege of voting is merely incidental ; they may have the right to vote before admission, and after excommunication, on the ground of a freehold in the society of a certain value ; but if, after excommunication, a question should arise

(*a*) 1 *Stat. Conn. tit.* 122. *c.* 3. *s.* 6.

(*b*) At an ecclesiastical council, convened in *November* 1794, in *Fairfield* county, to consider of complaints exhibited against the Rev. *John Shepard,* on a question put to the council, whether in the admission of testimony the council were to be governed by the rules of law, or to take the Scriptures for their rule, it was resolved, that the word of God was the rule by which they were to be governed.

whether the right to vote continued, the courts of law, and not a church meeting, must decide it.

From these considerations, I infer, that to take a false oath before a church meeting, though an act highly immoral in itself, and justly to be deprecated by every good man, does not amount to the crime of perjury, within the statute, or by the common law ; is not an indictable offence ; that to charge a person with it, cannot expose the person charged to a criminal prosecution or punishment ; and that the words charged are not of themselves actionable ; and the jury ought, in my opinion, so to have been instructed.

I should feel great reluctance in being obliged to come to this conclusion, if there was no redress for slanders of this description.    But the law, in my opinion, affords to the party injured an adequate remedy, by allowing an action for the words, accompanied with an allegation or averment of the particular or special damages sustained.    But were it otherwise, and the party remediless, great as the injury might be, and whatever indignation an offence so base might excite, I could not consider it as a justification for deviating, in the slightest degree, from any of the known and established maxims of the common law ; especially where, by the departure, a principle is indirectly established, calculated to swell the catalogue of crimes, to enlarge the criminal code, and furnish a *new* ground for public prosecutions.

SMITH, J.   The only question which this record presents, is, whether it is actionable to charge a man with taking a false oath before a meeting of the members of a *church,* acting as an ecclesiastical tribunal for the administration of church discipline.   My mind has not been entirely free from doubt on this subject ; but from the best attention I have been able to give the subject, I think such charge to be actionable. Upon principles of common law, perjury may be committed before any tribunal, in which an oath may be lawfully administered ; for where the law will sanction an oath, it will not refuse its aid to punish a wilful and corrupt violation of it.   And this point I understand to have been fully settled by this Court, some time since, in sustaining an action of slander upon a charge of taking a false oath before arbitrators.

If, then, a magistrate may lawfully, and without violation of official duty, attend on such a tribunal, and administer an oath, these words must be actionable. Whether he may or not, will depend on the nature and importance of their proceedings.

The several churches of the *congregational* order have exercised, by immemorial usage, the power of proceeding against any one of their members, on complaint made ; and, upon what they deem sufficient evidence, to find him guilty of any crime, however enormous or scandalous, and by their censures, or by expulsion, publish him to the world as guilty. This usage has so far become a part of the common law, that no individual falling under these censures can call the right in question, while the church proceeds without malice, and confines itself within the scope of its ecclesiastical jurisdiction. And these proceedings are similar to other ecclesiastical proceedings in this country. The associations and the consociations have severally their jurisdiction ; and among other denominations of Christians similar powers are exercised, and in a way adapted to their church government. Before a consociation, a *congregational* minister may be accused, found guilty, and removed from his people. The same thing may be done with an *episcopalian* minister, by proceedings before the bishop. Now, in all these cases, I see no reason why facts should not be proved by the oath of witnesses, as well as in the ordinary cases which come before the courts of the common law. And in many cases where the reputation of an individual is in question, or where, in case of a clergyman, as it often happens, both reputation and future support are in question, proceedings in these tribunals will be far more important than many of our trifling disputes about property, which arise in our common law courts.

BRAINARD and BALDWIN, Js. were of the same opinion.

GODDARD, J. The plaintiff brings his action of *slander,* charging the defendant with having imputed to him the crime of *perjury.* The declaration states, that the crime so imputed by the defendant to the plaintiff, was alleged to have been committed by the plaintiff, before a meeting of the members of a church, convened for the purpose of adminis-

tering discipline among its members; where, it is alleged, the plaintiff was sworn by a justice of the peace, to give evidence before the church.

The court charged the jury, that the words so spoken were actionable, and the plaintiff obtained a verdict. The defendant moved for a new trial.

Much has been said on this occasion, respecting the *Christian* religion being a part of the law of the land, and the importance and necessity of giving to churches and ecclesiastical bodies, the power of ascertaining facts through the medium of an oath. I hope I venerate that religion and its institutions, and should be very unwilling to impair their influence; but sitting here, I cannot permit those feelings to overcome my veneration for the principles of the common law, which I am bound to pronounce as I find them. Many of the considerations which have been urged here, are better calculated for a legislature than a judicial tribunal.

The question is, whether the words alleged to have been spoken by the defendant, concerning the plaintiff, are actionable? And this involves another question, which is, whether perjury can be committed in giving evidence before a church convened for the purpose of administering discipline among its members?

To render the speaking of words actionable of themselves, they must charge the person of whom they are spoken, with an indictable offence,—must expose him to a prosecution for some crime punishable by law. It is by reason of the *temporal damage*, to which the party of whom words are spoken, is exposed, that he is entitled to his action. Hence, to say of a man, that he is a knave, villain, scoundrel, and the like, are not actionable, because they impute no precise crime. *De Grey*, Ch. J. in *Onslow v. Horne*, 3 *Wils*. 187. says, " There must be some certain or probable temporal loss or damage, to make words actionable; but to impute to a man the mere defect or want of moral virtue, moral duties or obligations, which renders a man obnoxious to mankind, is not actionable." And in page 186. the correct rule is laid down : " The words must contain an express imputation of some crime liable to punishment, some capital offence, or other infamous crime or misdemeanour."

In this case, the crime which the plaintiff says has been imputed to him, is a precise offence, an infamous crime. and

*New-Haven,*
November,
1816.

Chapman
*v.*
Gillet.

for which, if guilty, the plaintiff was indictable and punishable temporally. If one man imputes to another the highest crime, but, at the same time, states such facts as shew, that the crime could not have been committed, the words are not actionable; as in the case of *Snag* v. *Gee*, 4 *Co.* 16. where the defendant said to the plaintiff, " thou hast killed my wife," &c. but as the declaration shewed that the wife was living, they were not actionable. So in this case, the declaration imputed to the plaintiff, the crime of perjury; yet he stated where, and on what occasion, the perjury, if any, was committed.

This brings into view the question, and indeed, the only question in the case; can perjury be committed in giving evidence to a church, convened for the purpose of administering discipline among its members?

In 3 *Inst.* 163, *et seq. cap.* 74. perjury is fully defined and explained. The definition here given, has been adopted and adhered to in *England*, since the time of Lord *Coke.* " Perjury is a crime committed when a *lawful oath* is administered, by any that hath authority, to any person in any *judicial proceeding*, who sweareth absolutely and falsely, in a matter material to the issue, or cause in question, by their own act, or by the subornation of others." In the same book, *p.* 165. the author says, " that no old oath can be altered, or new oath raised, without any act of parliament; or any oath administered by any that have not allowance by the common law, or by act of parliament." And hence, he says, it was, " that the commissioners concerning policies of assurance, could not examine upon oath, because they had no warrant either by the common law, or by any act of parliament, and therefore it was enacted, that it should be lawful for the said commissioners to examine upon oath any witnesses." In explaining his definition, that the oath must be administered in some judicial proceeding, he says " For though an oath be given by him that hath lawful authority, and the same is broken, yet if it be not in a judicial proceeding, it is not perjury punishable either by the common law, or by this act, because they are general, and extrajudicial, &c." And he adds, " If a man calleth another *perjured man*, he may have his action upon his case, because it must be intended contrary to his oath in a judicial proceeding; but for calling

him a *forsworn man,* no action doth lie, because the forswearing may be extrajudicial."

The same doctrine is laid down in the case of *Holt* v. *Scholefield,* 6 *Term Rep.* 691. The words charged in the first count in the declaration, were, " *Tim Holt* has *forsworn* himself, meaning that the plaintiff had committed wilful and corrupt perjury, and I have three evidences that will prove it." The plaintiff obtained a verdict, and judgment was arrested, because the words laid in the first count were not actionable. They did not necessarily impute to the plaintiff, the crime of legal perjury, false swearing in a court of justice.

*Christian,* in his notes to *Black. Comm. vol.* 4. *p.* 137. says, " Where an oath is required by an act of parliament, but not in a judicial proceeding, the breach of that oath does not seem to amount to perjury, unless the statute enacts, that such oath, when false, shall be perjury, or shall subject the offender to the penalties of perjury."

In indictments for perjury, it is necessary to set forth a legal authority to administer oaths. And in the case of *The King* v. *Aylett,* 1 *Term Rep.* 69. Lord *Mansfield,* in considering whether the indictment, which was for perjury, was sufficient, says, " I take the requisites to be these, the oath must be taken in a judicial proceeding, before a competent jurisdiction, and must be material to the question depending."

We have no statute authorizing a justice of the peace to administer an oath on such an occasion as the present ; no statute recognizing the jurisdiction where the oath was administered ; nor is it a judicial proceeding in any sense. A church is nowhere in our statutes clothed with either temporal or spiritual jurisdiction, as a *judicial tribunal,* or mentioned as possessing it. And however immoral, or improper, may be the conduct of a man who who may falsify the truth before a church, he cannot, according to my view of the subject, be indicted or prosecuted for perjury, according to any definition of that crime found in the *English* authorities.

If resort is had to the definition of perjury, as given by the statutes of the states around us, it will be found, that they have not thought proper to extend that crime farther than it was extended by the common law, or *English* statutes.

If this extended perjury is to prevail, therefore, it will be found to exist no where, except in this state. The nature of the crime of perjury is the same every where; its definition ought to be the same.

If we look into our statute, *tit.* 127. for the punishment of perjury, we shall find a definition of that offence, which corresponds with those already given, and excludes the idea of its being committed before a church. The expressions are, " shall wilfully and corruptly commit any manner of wilful perjury, by his or their deposition, *in any court of record, or upon examination,* every person so offending," &c. Perjury can only be committed, by this statute, by giving testimony in a court of record, or in the examination of witnesses on oath, doubtless in cases, where by some statute law, such examination is expressly authorized. Indeed, it is not claimed, that these words extend to the case under consideration. I think it must follow, that if the plaintiff had, before the church meeting, given false testimony, he might have been *forsworn,* but not *perjured.* He never could have been prosecuted and convicted, either at common law, or under our statute, of the crime of perjury; and that the defendant, by imputing to him false swearing on that occasion, did not expose himself to this action of slander.

But a decision of the former court of errors, which has not been published, is cited to prove that perjury can be committed before an arbitration; and that an action of slander was sustained against a man for charging another with false swearing before an arbitration : and that case is supposed to be decisive of this.

Admitting that decision to be correct, I do not consider it as an authority for this case. We have a statute respecting arbitrations. Testimony given before them, may, in some sense, be said to be in a course of judicial proceedings. It is, in some sense, *a court.* But with due respect to the court where that decision was made, I should hesitate about the doctrine ; because I find no authority for it in any book, and because I had rather the legislature should make express provision for that case ; and because I have a strong impression, that the superior court, afterwards, held a different doctrine on that subject. But I certainly would not extend it farther, on the ground of any supposed necessity or convenience, because I do not feel authorized to make law, and

because I cannot foresee to what length this supposed necessity or convenience may require me to go; and if the principle should be adopted, I imagine we should find much difficulty in carrying it into execution.

*New-Haven,*
November.
1816.

Chapman
*v.*
Gillet.

It is a part of the definition of perjury, which has never been shaken, that the testimony should be " material to the issue or cause in question." If a man should be prosecuted for perjury, either before a church, or other ecclesiastical tribunal, their rules of evidence, and modes of proceeding, are so different from those which prevail in a judicial tribunal, that judges and jurors would be much puzzled to ascertain, either what was the issue, or what testimony was material to support it; and having no rules of evidence by which they could judge of the materiality of the testimony, resort must be had to the members of the church, to prove what they judged material. To mention a single case :— Hearsay evidence is not material, or admitted in courts of justice ; but ecclesiastical councils have been called on to decide whether " a bishop was of good report." Here is a case depending wholly on such evidence as a court of law must exclude ; and which, however, would probably present less difficulties than many others, as to what testimony is material, but serves to shew, that in trying indictments for this kind of perjury, an entire departure will take place from the rules of evidence which prevail in courts of common law.

On the whole, I am clearly of opinion, that the justice had no authority, by law to administer an oath to the plaintiff ; that a church is not a judicial tribunal where perjury can be committed ; that the plaintiff could not have been convicted for perjury there ; that of course, no action will lie against the defendant for imputing to him that crime ; and that a new trial ought to be granted.

HOSMER, J. Before I assign the reasons, which induce me to consider the words spoken as actionable in themselves, I will endeavour to remove some of the objections on the part of the defendant.

It is said, that no witness is compellable to appear before a church meeting, or is indictable for false swearing there. This is *petitio principii,* or a mere begging the question in dispute. It takes for granted, the point to be established,

that before a church meeting, a lawful oath cannot be administered.

It was contended, that the only tribunal, before which perjury can be committed, is one that acts on *civil rights,* and affects them directly. I do not admit either branch of the proposition. The criterion which decides the question of perjury, is not the operation of the judgment, but the legal administration of the witnesses' oath before a competent jurisdiction.

The *episcopalians,* it has been suggested, from their mode of administering church government, could not take advantage of the principle contended for by the plaintiff. What then? If this respectable body of *Christians* do not want the protection of the law, in the matter before the court, it is a strange *non sequitur,* that those shall be deprived of the benefit, who have occasion for it.

It is insisted, that special damage should have been averred in the plaintiff's declaration. This is another assumption of the matter in controversy. If the words are actionable *per se,* the statement of special damage was unnecessary.

It is likewise urged, that the plaintiff now claims a new class of actionable words, in addition to those already recognized. Nothing can be more unfounded than this suggestion. The words are of old and established rank. They impute a charge of perjury. Whether false swearing before a church meeting verifies the declaration, is a question, by and by, to be considered.

Innovation has, likewise, been objected. That the words spoken, in their *species,* are new, will not be denied; but in their *genus,* or the general principle which renders them actionable, they are old. If this proposition is sustainable, the pretext of innovation will successfully be refuted.

The material enquiry is, can perjury be committed by false swearing in a church meeting? It is not indispensable, to constitute this crime, that the oath should be taken in a judicial proceeding. " Also it hath been resolved," says *Hawkins, Pleas of the Crown, vol.* 1. *p.* 173. " that not only such oaths as are taken in judicial proceedings, but such as any way tend to abuse the administration of justice, are properly perjuries; as where one takes a false oath before a

*New-Haven,*
November,
1816.

Chapman
*v.*
Gillet.

justice of peace, in order to induce him to compel another to find sureties of the peace, &c. or where a person forswears himself before commissioners appointed by the king, to enquire of the forfeitures of his tenants' estates, &c. whereby he makes them liable to be seized by exchequer process: also it hath been said, that a false oath is punishable as perjury in some cases, wherein the king's honour or interest is concerned, though it do not concern the administration of justice; as where one swears a false oath concerning the possession of lands, before commissioners appointed by the king, to enquire of such persons whose titles to the lands in their possession are defective, and want the supply of the king's patents."

I have made the preceding remarks, for the purpose of simplifying the matter in dispute. In my opinion, it was not necessary. The proceedings in a church meeting, on a prosecution brought before it, are strictly judicial.

To constitute perjury, there must be the violation of a lawful oath, taken before a competent jurisdiction. 3 *Inst.* 165. 4 *Black. Comm.* 137. 1 *Hawk. P. C.* 172, 173. *The King* v. *Aylett,* 1 *Term Rep.* 63. 69.

First, the oath was administered to the plaintiff, by a justice of the peace. Its legality, so far as relates to the person administering it, or the mode of its administration, has not been called in question.

Secondly, a church meeting is a competent jurisdiction to administer public justice, through the medium of legal testimony. A lawful oath to the witnesses before it, not only may, but must be given. This is the great point on which the testimony depends. If the oath may not be administered, it is a transaction which no court can recognize. But if it may lawfully be given, the law will regard it, and not suffer it to be violated with impunity. " An oath," says Lord *Coke,* 3 *Inst.* 165. " is an affirmation or denial of any thing lawful and honest, before one or more, that have authority to give the same, for the advancement of truth and right. The same cannot be administered to any, unless the same be allowed by the common law, or by some act of parliament." " The law," says Sir *W. Blackstone,* " takes no notice of any perjury, but such as is committed in some court of justice, having power to administer an oath, or before some magistrate or proper officer invested with a similar author-

ity. It esteems all other oaths unnecessary, at least, and therefore will not punish the breach of them." *4 Black. Comm.* 137. *Hawkins* observes, " that all such false oaths as are taken before those who are any ways entrusted with the administration of public justice, in relation to any matter before them in debate; or that are taken before persons authorized by the king to examine witnesses in relation to any matter whatsoever, wherein his honour and interest are concerned, are also punishable as perjuries. Therefore, it hath been holden, that not only such persons are indictable for perjury, who take a false oath in a court of record, but also those who forswear themselves in a matter judicially depending before any court of equity, *spiritual court,* or any other lawful court." 1 *Hawk. P. C.* 172, 173. He then proceeds to remark, that perjury may be committed in a proceeding not judicial, and even where the administration of justice is not concerned. The passages referred to, have been recited in the former part of my argument. Promissory oaths, oaths in a mere private matter, oaths that are unnecessary, are not susceptible of perjury, because they can never be legally administered.

The principle to be extracted from the authorities cited, is obviously this; that all oaths taken by witnesses before acknowledged authority, which are necessary, and concern the honour or interest of the state, the law recognizes, and, if violated, will punish. This is in the true spirit of the common law, founded, as it is, on private justice and public convenience.

1. Church meetings are of acknowledged authority. For more than a century, the constitution of the *presbyterian* or *congregational* churches has existed. In *October* 1708, the *General Assembly* recognized and confirmed the regulations for the administration of church discipline, presented by the ministers of *Connecticut.* From that period, most of the churches in this state, have acted under this ecclesiastical constitution; and the proceedings in church meetings, in the forms and in the solemnities of judicial courts, have been of universal notoriety. As far back as the year 1728, all persons of full age, and in full communion with the church, were, by statute, made voters in town and society meetings, for the calling of ministers and providing for their support. *Stat. tit.* 114. A part of the business of

*New-Haven,*
November,
1816.

Chapman
*v.*
Gillet.

church meetings is, to take cognizance of complaints against church members, and, if warranted by proof, to excommunicate them.

2. The administration of a lawful oath in church meetings is highly necessary.

This proposition, the mind is favourably disposed to admit. No mischief can result from the doctrine, that a witness in church meeting, must be put under the solemn obligation of an oath. The interest of the party prosecuted demands it ; and the protection of the witness himself, from false aspersions of the malignant, renders it equally important. It is founded in absolute necessity. What security has a church member for the due administration of justice, if he may not compel a witness to appear and testify ? What, if he has not a legal protection against false testimony ?

Every witness must be protected. If perjury may be imputed to him with impunity, who will censure him for refusing to give evidence ?

To obviate these difficulties, it has been said, that the interests of truth and justice do not require, that the witness should be under oath. This assertion flies in the face of the universal sense of mankind. In all countries, an oath is required, as a security for a person's speaking the truth. No court, however inferior, exercises its jurisdiction in any other manner. An oath is at the foundation of all government. Presidents, governours, legislators, judges, witnesses, all are put under the solemn obligation of an oath, to ensure confidence in the performance of their respective duties. It is justly considered as the highest security that exists, for compelling a sacred regard for truth. Why, then, is it not equally necessary, that the dearest interests of a church member should be guarded by this salutary regulation, as the small pecuniary interest of the litigants, in a suit merely civil ?

The assertion, that no process may issue to compel the appearance of a witness, before a church meeting ; no oath may be administered ; no perjury can be committed ; no character can be protected from the viperous tongue of slander, is equivalent to saying, that there shall be no testimony before such an assembly. If this doctrine would not destroy the jurisdiction of church meetings, it has a strong tendency to do it ; and so far forth it operates to impair the purifying

effects of discipline, and obstruct the amelioration of public morals.

3. The proceedings in church meetings, concern the honour and interest of the state. They are not to be classed with literary clubs, and other assemblies of a mere private character. The state has a deep interest in the preservation of public morals, in the protection of all its citizens, and in the support of all their rights, religious, civil and political. When did the state establish the constitution of a mere private assembly, and confer on the members, as a consequence, the right of voting in a public meeting, in relation to an important public office ?

The usage, on the subject of administering oaths in church meetings, so far as I am informed, has been general and immemorial. But on this point I lay no great stress, because, I think, the practice is justified by the established principles of the common law.

The immediate object of a prosecution in church meeting, is the discipline of its members ; and if it results in excommunication, the necessary effect is the privation of an important civil right. On this subject I shall not expatiate. I again repeat, that the material question is not, whether the jurisdiction of the church ultimately operates on the civil, political, or religious rights of the individual. It is exclusively this ; was a lawful oath administered to the witness ?

The determination of the Supreme Court of Errors, in 1795, in *Wetmore* v. *Lyman,* by analogy, governs the present case. That court decided, that words imputing perjury committed before an arbitration, were in themselves actionable. A church meeting, at least, is an arbitration. Each member voluntarily submits himself to its determinations.

It was said in the argument, that the decision of *Wetmore* v. *Lyman,* is not law. I answer, we have the most convincing evidence of the contrary. Until the judgment of the highest court known to our laws, is either reversed, or called in question by co-ordinate authority, it is conclusive. On the truth of this position rests the whole doctrine of precedent.

GOULD, J. I cannot but lament the occasion, which obliges me to dissent from the opinion of the court. For if the direction to the jury was wrong, (as I am convinced it was)

*New-Haven,*
November,
1816.

Chapman
*v.*
Gillet.

the error is of no ordinary kind; as it does not consist so much in mistaking, or misapplying, any known principle of law, as in *making* law *de novo*. For I am unable to conceive how the direction can be supported, without virtually introducing a new class of actionable words, and that too, by promulging, for the first time, a new species of perjury, hitherto unknown, I suspect, in any criminal code whatsoever. I say, " perjury," because the words complained of, impute either *that* offence, or none at all, that is recognized by the statute, or common law—none, certainly, for the imputation of which an action of slander can be maintained.

Before I recur to authorities, on this point, I would observe, that words, to be actionable, as charging an offence, " must," in the language of Lord Ch. J. *De Grey,* " *contain an express imputation of some crime, liable to punishment.*" 3 *Wils.* 186. 6 *Term Rep.* 694. Can any man define the offence, which the words in question impute to the plaintiff, supposing it *not* to be perjury? Till I am informed what the crime is, I can never consent to decide, judicially, that the act is criminal. In a court of justice, I would not, advisedly, *make* law, of any kind; much less, would I make criminal law; and least of all, would I create a new offence, *incidentally,* upon a question arising in a civil suit.

What, then, I repeat, is the offence, charged by these words, if it be not, as I hope to show it cannot be, *perjury?* On this point our books have left no room for doubt, or speculation. They establish the point, beyond controversy, that words, charging such false swearing as does not amount to the legal offence of perjury, are not actionable—as *not containing,* " *the express imputation of any crime liable to punishment.*" A detailed exposition of the cases would be very arduous, and cannot be necessary. They are numerous, but familiar: and they establish the rule, beyond all doubt, that a charge of *false swearing*—of having taken a *false oath*—or of being *forsworn,* is not actionable, unless it amounts to an imputation of perjury, in the strict, *legal* sense of the word. From the cases of *Stanhope* v. *Blith,* 4 *Co.* 15., and *Gore* v. *Moorton, Cro. Eliz.* 905., through a long series of succeeding cases, even down to the present time, this rule, I believe, has been invariably recognized, except in a single *dictum,* found in 1 *Bulstr.* 40., which is directly opposed to every prior authority, and has been

Chapman
*v.*
Gillet.

virtually over-ruled by every later one : a *dictum,* which no one now claims to be law. I will merely refer to a few of the authorities. 3 *Inst.* 166. 1 *Rol. Abr.* 70. *Skinner* v. *Trobe, Cro. Jac.* 190. *Page* v. *Keble, Cro. Jac.* 436. *Com. Dig.* tit. *Action upon the case for Defamation, F.* 5. *Holt* v. *Scholefield,* 6 *Term Rep.* 691. *Hopkins* v. *Beedle,* 1 *Caines,* 347. *Stafford* v. *Green,* 1 *Johns. Rep.* 505. *Ward* v. *Clark,* 2 *Johns. Rep.* 10. *Vaughan* v. *Havens,* 8 *Johns. Rep.* 109. *Shaffer* v. *Kintzer,* 1 *Binn.* 537. It would be a waste of time, to comment upon any of these cases. It is sufficient to observe, that the rule I have just laid down, is fully recognized in all and each of them.

The only question remaining, is, whether false swearing, before a meeting of church members, can amount to the legal offence of perjury ? The enquiry is not, whether it is a crime in *foro conscientiæ.* This could never be a question. But is the offence perjury, under that law by which we are bound to decide ?

The simplest way of examining the question, would be to suppose a person indicted of perjury, in swearing falsely before a church meeting ; and then to inquire whether such an indictment could be maintained.

That it would lie upon our statute, is not, I think, seriously contended ; for no one will claim, that a church meeting is a court of *record.*

Can the offence, then, amount to perjury at common law ? This Lord *Coke* defines to be, " a crime, committed where a lawful oath is administered, by any that *hath authority,* to any person, in any *judicial proceeding,* who sweareth wilfully, absolutely and falsely, to a matter *material to the issue.*" 3 *Inst.* 164. And this definition is, substantially, adopted, by every later authority. Lord *Coke,* in commenting upon his own definition, adds, " For, though an oath is given by him, that hath *lawful authority,* and the same is broken ; yet, if it be not in a *judicial proceeding,* it is not perjury, either by the common law, or this act," *i. e.* the statute 5 *Eliz.* c. 9. And Mr. Justice *Blackstone,* inculcating the same doctrine, observes, " the law takes no notice of any perjury, but such as is committed in some *court of justice,* having power to administer an oath ; or before some magistrate, or proper officer, invested with a similar authority, in some proceedings, relative to a *civil suit,* or a *crimi-*

New-Haven,
November,
1816.

Chapman
v.
Gillet.

*nal prosecution.*" 4 *Black. Comm.* 137. To this passage the following note is subjoined by *Christian :* " Where an oath is required by *act of Parliament,* but not in a *judicial proceeding,* the breach of that oath does not seem to amount to perjury, *unless* the statute *enacts,* that such oaths, when false, shall be perjury, or shall subject the offender to the penalties of perjury." And hence we find it repeatedly provided, in statutes prescribing oaths before *executive officers,* that such oaths, if wilfully false, shall be considered and treated as perjury. The text of *Hawkins* is equally explicit to the point, that no false oath can be perjury, unless it is taken either *directly* in a judicial proceeding, or, (which is, virtually, the same thing,) in some transaction, immediately and necessarily *connected* with some such proceeding. 1 *Hawk. P. C. c.* 69. *s.* 3.

A comparison of the law, as explained by these high authorities, with the case before the court, would have seemed to me, I confess, to supersede the necessity of argument. By a " judicial proceeding," is undoubtedly meant, a proceeding in some *court of justice,* known to the law. This is not only clear from the plain import of the term itself, but demonstrable from that numerous class of authorities, to which I first referred. Now, in what sense, known to the law, is a meeting of church members a court of justice ? By whom, by what authority, and under what law, are the judges of that court appointed ? To whom are they responsible, for the proper exercise of their judicial powers ? Have we, in this state, benches of judges, appointed by *themselves*—courts of justice established and organized by their own authority, and amenable to no other ; and consisting of males and females, husbands and wives, parents and children, adults and minors ? I am not to be understood, as speaking disrespectfully, or irreverently, of those associations. They are, doubtless, established and adapted to promote the highest interests of mankind. What I insist upon is, merely, that they have no concern whatever with the administration of justice, as it is understood in the law. A church is not even a body politic, and is not known to the law, except as a voluntary association of *individuals.* It possesses *no one* attribute, or feature, of a court of justice. Its authority is merely spiritual ; founded, exclusively, in mutual compact ; can be exercised only over its own members ; and extends.

*New-Haven,*
November,
1816.

Chapman
*v.*
Gillet.

I believe, only to admonition, suspension, and expulsion. An association of persons, less resembling a court of justice, can hardly be described or conceived.

What has been said in relation to oaths, taken before arbitrations, I consider wholly irrelative ; not only because it is repugnant to the first principles of jurisprudence, to extend criminal law *analogically,* but also, because there is no analogy whatever between the two cases. Arbitrations are considered, both by the common and statute law, and are practically, a species of *civil* tribunal, whose powers and proceedings are regulated by law, and whose decisions are enforced, or set aside, by the established courts of justice. Whether a false oath, taken before such a tribunal, may amount to perjury, or not, we have no occasion in the present case to inquire. I also lay out of the question all reference to the powers and proceedings of *ecclesiastical councils.* It will be soon enough to inquire into that subject, when it is brought in question. To argue from such supposed analogies, is like proving *ignotum per ignotius.* Whatever may be the powers, or legal character of such councils, it is sufficient to say, that a church meeting has no civil power whatever, and cannot, in any propriety of speech, be called a civil tribunal. The members do, indeed, submit their *own* religious and moral conduct to the arbitrament of *each other,* for the purpose of spiritual discipline ; but, to say, that they are, for this reason, a court of justice, would be not less extravagant, than to call them a civil legislature.

It is urged, however, that a church meeting, by exercising its power of expulsion, may affect a civil right—that of voting in society meetings. If this proceeding did, *immediately,* affect the civil rights of its members, the fact would be of no importance at all in the present question. For the inquiry would still recur, is such a meeting a court of justice known to the law ? If the members of a library company, or of any moral association of individuals, having, by compact between themselves, the power of expulsion, should, as such, be authorized by law, to vote in society meetings ; would those associations become, *ipso facto,* courts of justice ? But the effect of expulsion from a church, upon this right of suffrage, is neither *immediate* nor *necessary.* It is altogether CONSEQUENTIAL, and even CONTINGENT : for the expelled member may still have any of the other qualifications for voting.

Here, then, at least, the distinction is radical, between a church meeting and a civil tribunal ; and it would be the grossest perversion of language, to say that the former, in deciding a question of expulsion, decides upon the *civil* rights of the party concerned.

But a church, it is said, may have property of its own ; and the interest of a member in it, may be forfeited by expulsion. Admitting the fact to be so, is it introduced to prove, that a church meeting is a court of justice ? If it is, my answer is already given : If not, no answer appears necessary.

But further : To constitute perjury, the false oath must have been " *material* to the issue," or point in question. Now, this Court does not, and cannot know judicially, what is material to any issue, joined in a church meeting. We know neither their rules of evidence, their rules of decision, nor their forms of proceeding. The law of the land we are bound to take notice of, *ex officio ;* but of the private ordinances, or rules of conduct, adopted by a voluntary association of individuals, we cannot, as a court, have any knowledge. The idea, that the *lawfulness* of the oath forms the criterion—so that if the administration of it, in any given instance, is not criminal, perjury is, of course, predicable of it, derives no countenance from any case, or *dictum,* in the law. Indeed, it is flatly repugnant both to the text of Lord *Coke,* and the note of *Christian,* already cited. We have, therefore, no concern with the question, whether the oath, administered to the plaintiff, was lawful, or not ; nor am I apprehensive, that such a question will ever arise. There is no danger, I trust, that courts of justice are about to interfere with the discipline of our churches, or, in any way, to call their forms of proceeding in question.

As to the argument, derived from *usage,* that our churches have been in the practice of receiving testimony upon oath ; I answer, first, that no such general usage appears to exist, or to have existed, in the state. But, assuming the fact to be as is claimed, to what an extravagant and alarming extent would the conclusion lead ! It is well known, that voluntary, extrajudicial oaths have become very frequent ; for the sake of public morals, much too frequent ; and it is desirable, without doubt, that our magistrates should so understand the subject. We hardly see a public

*New-Haven,*
*November,*
*1816.*

Chapman
*v.*
Gillet.

newspaper, in which such oaths are not annexed to a certain sort of advertisement ; and it is notorious that they have been multiplied, in the forms of maritime protests, and in various other ways, far beyond the occasions, on which they are prescribed by law. But will it be claimed, from this " usage"—(far more general than the one in question)—that such oaths, if false, are punishable as perjuries ? I take it to be perfectly clear, from the most explicit and unquestionable authority, that, by the common law, they are not punishable at all. 4 *Black. Comm.* 137. 1 *Hawk. P. C. c.* 69. *s.* 4. Whether this rule is right or wrong, it is for the legislature, and the legislature only, to enquire.

It is finally urged, that, unless perjury can be assigned upon oaths, administered in church meetings, our churches are left without protection, and cannot be preserved. This apprehension appears to me, I acknowledge, not only groundless, but visionary ; nor do I suppose that the preservation of our churches is any more connected with the present determination, than with any other, that has been made in this Court. How have the colleges and other seminaries of the country, in which moral and academical discipline is constantly enforced, been preserved and protected, without the administration of oaths ? How have the churches themselves, of all denominations, been thus far supported ? And why has the evil, now so much apprehended, never yet been felt ? But admitting the danger to exist,—let it be made known to the legislature ; to that body, which alone has the power to furnish a remedy. Are we, upon such suggestions of danger, to *make* law for the protection of the churches ; to add a new chapter to the criminal code ; and create a new offence, hitherto unheard of in the state, and probably in christendom ? I cannot assent to such a precedent.

New trial not to be granted.