. Johnson J.
The grounds of this motion accords to . the prosecution the existence of all the facts necessary to the consummation of the crime of perjury, except the competency of the arbitrators, as such, to administer the path to the de fendant. ■
■It is of the very essence of the crime that the false oath should have been taken in a judicial proceeding, or some other proceedingin like nature, and that the person by wkoyi it is administered should have competent authority to receive it.. (5 Jacob. L. D. 135. Tit. Perjury. 2. Chitty. Crim. Law 304. Tit. Perjury.)
In genera], any judicial tribunal, or any person instructed with the administration of justice, are competent to administer oaths in relation to matters within their cognizance. Such for instance are the superior and inferior courts of law and equity, courts .of limited jurisdiction, magistrates &c. (Haw. P. C. Book 1. ch. 69. p. 3.) And it has been held to extend to commissioners appointed by the king to enquire of forfeited estates,.whereby they are liable to be seized by the exchequer process. (Noy. 100.)
The conclusion to be drawn from these definitions, results I think, clearly in the deduction, that to entitle any one to-administer an oath he must be clothed with a species of judicial power. In" theory all judicial power is supposed to be lodged in the supreme authority of the State, and' so much of it as may be necessary to the well being of the community is delegated to the different tribunals and functionaries. Thus, in England, the king is said to be. the fountain of justice, and that through his courts be dispenses it to the subject. *311 And it is one of the peculiar properties of this power that he,-to whom it is granted, cannot delegate it to another. — It follows, therefore, that judicial power cannot exist, unless it is derived from the supreme authority of the State.
In applying these principles to the case under consideration we are necessarily led to enquire from what source the powers of arbitrators are derived, and thence to conclude, whe»-ther they are judicial or not? They are, generally, when a case is referred by rule of court, nominated by the parties themselves, and in this particular case by a third person, with their consent, and, so far, it would seem, must derive their authority from the joint act of the parties and the sanction of the court and, neither, as has been before shown, could invest them with judicial authority. There is no act of the legislature authorising this mode of proceeding or recognizing the existance of such a tribunal, and in this State it owes its origin and countenance to the usages and practice of the courts.
But it is contended, in behalf of the motion, that notwithstanding the legislature has not by any express enactment, and that although neither the court nor the parties invest them with that character, j'et they derive it from the nature of their office and from the usage and' practice of the country.
In England, from whence our common law rules are derived, and which are imposed on us by the express enactment of the legislature, it was the practice of - the courts to have the witnesses who were to be examined before arbitrators sworn in open court. (Kyd on Awards 95.) From whence" it may be fairly deduced that the arbitrators had ¿tot the power to administer an Oath; and although it will riot be controverted that a long continued and inveterate usage would control and abrogate a rule established even by this authority, it may safely be denied that it does exist. My awn experience is, and such is believed to he the. usage, to *312 procure the- attendance of a magistrate by whom the oath w administered- This argument must therefore fail.
The case of Chapman vs. Gillet (2 Conn. Rep. 40) and the case of Lyman & Westmore, referred to in that opinion, have been relied hn. The first of these Cases, it will be seen, involved, incidentally, the question, whether giving false evidence under an oath administered by a magistrate, before a church convened for the purpose of administering discipline amongst its members, constituted the crime of perjury, and chief justice Swijt rests his opinión entirely on the ground-of usage, both as to the judicial powers of that tribunal and the mode of administering the oath.
I have hot been able to find the case of Lyman vs. West more otherwise reported than by a reference to it in the pre ceding case, and it would appear, that that case involved the precise question under consideration, and in which' the dissenting judges in the case of Chapman vs. Gillet, [Edmond and Goddard,) admit that perjury may be assigned on a false oath taken before arbitrators. But they ' rest their assent exclusively on the ground, that the powers of the arbitrators are derived from the statutes of the State of Connecticut. • Both those cases therefore are reconcilable to the principles laid down. In the on.e, Usage Has consecrated the church as a sort of judicial tribunal, together with the mode of administering the oath, and the other derives its sanction from the enactments of the legislature, the supreme authority of the State.
It is urged, however, that to deny the power of arbitrators to administer an' oath would be destructive oí that convenient and salutary tribunal in aid of the administration of justice and in adjusting the disputes of individuals. 1 think, however, that the remedy is furnished by the case of Chapman vs. Gillet; if, as it is supposed, the usag-e is to administer an oath through the agency of a magistrate, on which I should be induced to think that perjury might be assigned, for the same reasons that it may in a variety of in *313 Stances tfrliere the act is ancilliary to • the administration’ of justice; as in an affidavit to hold to bail, to produce a con* tiny anee or the like.
Earle, Sol; for the motion.
Motion refused.
eontra.