Curia, per
Johnson, J.
This question was incidentally noticed in the opinion of the court delivered by myself in the case of the State vs. M‘Croskey, 3 M'C. 308, in which the intimation of an opinion that perjury might be assigned on such an oath is thrown out, and subsequent reflection has fully satisfied me of the corectness of the observation. Mr. Russell in his Treatise on Crimes, 2dvol.p. 1751, defines perjury to be, the taking of a false oath by one, who being lawfully required to depose the truth in any proceeding in a court of justice swears falsely, in a matter of some consequence to the matter in question. But it is evident that this definition, so far as it regards the tribunal or authority before which it is taken. *166 is too limited; as it would tend to exclude all affidavits and depositions taken out of court, however necessary they might be to the administration of justice. Serjeant Hawkins and Chief Baron Comyn are the authorities relied on for this definition, and upon referring to these authorities it will be seen that the word court has been substituted instead of the word course, originating probably in a typographical error, (Vide 2 Haw- P. C. 315. ch. 69. Com. Dig. Tit. Justice of the Peace, B. 102,) and it follows that perjury may be assigned on "any false oath taken before a person duly authorised to administer it, in a course of justice. But they all agree that perjury cannot be assigned on any oath taken before persons acting in a mere private capacity, or before those who take-upon themselves to administer 'an oath of a public nature without legal authority; nor even where it is administered under the color of authority, and it is in truth unwarrantable and void. Of this class are all oaths which are merely voluntary, and from which no legal consequences are to follow. 2 Russell oh Crimes 1-756.
The authors béfore cited háve collected a great variety of eases calculated to mark the line of separation between that class of oaths which, with respect to thé- tribunal" by which they'are administered, constitute the crime of perjury, ánd those Which do not; and without entering into aminutef analysis of them, all'the principle clearly deducible frbmdhem is, that whenever the law confers tii'e power of ascertaining facts, ánd from which any legaf eon-se"4hefices "are tb follow, and in" the "investigation of Which the-examination of witnesses-áre necessary, it is perjury in k witness- to testify falsely. In order tb come at the ebrrdcf application oí this' principle to this case) it will be necessary to Ascertain with some decree of certainty the pbwefS and l'égál character óf áíbitratorsj síttíhg in judgment in a matter referred to them by the act of the parties., *167 and the consequences which follow their judgment. The right of parties to refer matters in controversy to the judgment of private individuals, has never been denied. Judging from probabilities and calculations, from, the ordinary progress of human society, it may be concluded that this mode of settling controversies followed the laws of force, and preceded any regularly constituted system of jurisprudence. At any x-ate it has existed as far back as we can trace the history of our own. And our courts of justice have invariably held their awai-ds as conclusive as to the lights of the parties; and unless impeached for fraud or partiality, they are, in law, as obligatory on the parties as the judgment oí a court in the last resort, and with the exception of the want of the power of enforcing them, must be regarded as equally authoritative, A practice in. strict conformity with that adopted on the reference stated in the indictment, is mow invariably prevalent in this state. - .
When a matter is refen-ed by the pai’ties to aihitration, the attendance of a Magistrate is procured, who administers the appropriate oath to the witnesses who are examined ; and this usage has, it is believed, been handed down from the first settlement of the counti-y. In this state, at an early period, the mass of the population was concen-tered in and near the city of Charleston, and the courts of justice were principally situated there, and were in some degree inaccessible to the scattered population of the interior, and a resold to these domestic quasi tribunals was their only resource, and hence the uniformity and.inveteracy of the usage.
It is objected however that this is not a judicial tribunal, and that therefore perjuiy cannot be assigned on a false oath taken before it. According to the principle before laid down, it is not indispensable that the power should be exclusively judicial. It is sufficient that they are by *168 •law invested with the power of ascertaining facts by the -examination of witnesses, which may be illustrated by the .common cases of affidavits made before a majistrate, in ■relation to some proceeding to be instituted in a court of justice ; as to hold a defendant to bail, to effect the continuance of a cause depending, and the like. In these cases the justice has no power over the subject. The act is merely ministerial and ancillary to the administration of justice. But yet perjury may be assigned on such an oath, and the reason given is that it is calculated to mislead the court in pronouncing its judgment. And it is contended by Sergeant Hawkins, and I think with great force, that a false oath taken before persons authorised by the King to-■examine witnesses, in any matter whatsoever, touching: his honor or dignity, are such that perjury may be assigned on them. Again, the law acting upon the contract of the parties, authorises the arbitrators' to determine the matters in dispute, their judgment is conclusive, and the courts of justice enforce them. Perjury is calculated to mislead them, and of course the courts of justice, and in this respect the principle which renders a false oath perjury, which is ancillary to the administration of justice, equally applies. It is objected also, that the magistrate has no authority to administer the oath. Very many of the powers which belong to the judicial as' well as ministerial officer are derived from the common law, the creature of usage, and there is none better sanctioned than this-
The case of Chapman vs. Gillet, 2 Conn. Rep. 40, on which I have drawn so largely in the ease of the State vs. M’Croskey, contains a principle which I think is sustainable on the clearest principles of sound reasoning, and which is assented to by the minority-of the court — it is, that when an oath is administered in the course of a proceeding sanctioned by the express enactment of the legislature, or by the common consent and usage of mankind, *169 and from which a temporal loss to any one arises, it is perjury to swear falsely. The question in that case was whether it was peijury to swear falsely in a matter concerning the government and discipline of the members of a church; and the opinion of the court proceeds on the ground, that inasmuch as the party concerned might in the event be excluded from voting, that it was perjury; and the minority appear to admit the principle but deny that the consequences would follow, and claim for the law tribunals the power of passing on the right of the party to vote. The application of this principle to the case under consideration is obvious. There the oath was administered under an authority sanctioned by common consent and immemorial usage. It directly affected the temporal interest of the party in a manner as conclusive as the judgment of a court of justice. In morality the offence is as great, whatever may be the character of the tribunal, and its effects and legal operation in the particular case are nearly the same.

Demurrer overruled.