JOHN CURTISS *against* SETH STRONG.

MOTION for a new trial.

This was an appeal from a decree of probate establishing the last will and testament of *Noah Norton*, deceased. The appellee was the executor, and the appellant one of the heirs at law.

The reasons assigned by the appellant were, first, that the testator was not of sound mind and memory; and, secondly, that the will was not witnessed by three witnesses.

The court found the latter allegation to be true; and disaffirmed the decree of probate.

On the trial before the court, the appellee, to prove the execution of the will, offered as a witness *Ebenezer Robinson*, who had set his name to the will in that capacity. The appellant objected to his admission, on the

A person who does not believe in the obligation of an oath, and a future state of rewards and punishments, or any accountability after death, is an incompetent witness; but every person who does, whatever may be his religious creed, is admissible, being sworn according to that form of oath which he holds to be obligatory.

The opinions of a witness relative to the obligation of an oath may be proved from his previous declarations out of court.

In such case, the witness cannot be admitted to deny or explain in court the declarations imputed to him, as it would be absurd to admit a man to his oath for the purpose of learning from him whether he had the necessary qualifications to be sworn.

On an appeal from probate, issue was joined on the allegation *that there were not three witnesses to the will;* under which issue, it was held, that evidence might be received to show, that one of the supposed witnesses was incompetent by reason o. his disbelief in the obligation of an oath.

June, 1809.

CURTISS
v.
STRONG.

ground that he did not, at the date of the will, or at any time since, believe in the obligation of an oath, and in a future state of rewards and punishments, or any accountability for his conduct after death; and offered to prove the truth of this objection by witnesses. The appellee objected to the admission of any witnesses for this purpose, but the court admitted them, and they supported, by their testimony, the objection made by the appellant.

The appellee then offered *Robinson* himself, as a witness, to testify that certain declarations of his, sworn to by the witnesses introduced by the appellant, were never made by him; and to give a correct representation of the conversation alluded to; and likewise to testify what his religious principles were, at the date of the will: and with this view, the appellee stated to the court, that *Robinson* was, at the time of the trial, a believer in the obligation of an oath, and in future rewards and punishments after death, and had ever been. The appellee, therefore, requested that he might be examined touching his religious creed on these subjects, and receive the oath. But the court refused to permit such examination, or the administration of the oath to him.

For these reasons, the appellee moved, that the judgment of the court might be set aside, and a new trial granted. This motion was reserved for the consideration of the nine judges.

*Ingersoll* and *Hosmer*, in support of the motion.

1. The issue put to the court, and tried by them, in this case, was, whether the will of *Noah Norton* was witnessed by three witnesses. The court erred in admitting, under this general expression, testimony respecting the *qualifications* of *Robinson* as a witness. As a rule of practice or pleading, it is highly necessary, that in the reasons assigned, the person objected to be named, and his disqualifications specified. Here, there is

not reasonable certainty that the will was not witnessed by three witnesses. The ordinary acceptation of the phrase would have been, that there were not *numerically* three persons who subscribed the will as witnesses, and it was impossible to tell, from this issue, what was to be tried.

2. The court erred in deciding, that the unbelief of *Robinson* in the obligation of an oath, and in a future state of rewards and punishments, or any accountability for his conduct after death, constituted a disqualification sufficient to render him incompetent as a testamentary witness.

Let it be kept in view, that the question is not concerning the credibility, but the competency of the witness; not concerning the correctness of his opinions, but his fitness to testify; and that every person, not otherwise exceptionable, is a competent witness, who is *worthy of any credit* under the sanction of an oath. Upon this principle we contend that no man but an *atheist* ought to be excluded. This is the result of the several opinions given with great consideration in *Omichund* v. *Barker*. It is clearly settled, that *Jews* are admissible;(*a*) but how can the court say, that they are under stronger obligations to speak the truth than those who merely believe in the existence of a God? *Mahommedans*(*b*) and *Gentoos* have been admitted;(*c*) but these are brutish and groveling in their notions beyond description. A *mere speculative believer* in divine revelation would undoubtedly be admitted; yet every person knows, that such a one may unite in his character every thing that is vitious and depraved. Nor have the courts rejected *universalists*, who believe there is no punishment after death. The fear of future punishment is not the

(*a*) 2 *Hale's P. C.* 279.

(*b*) *Morgan's* case, *Leach's Cro. Cas.* 58. *Dub. edit. Fachina* v. *Sabine*, 2 *Stra.* 1104.

(*c*) *Omichund* v. *Barker*, 1 *Atk.* 21. S. C. *Willes*, 538. *Peake's Ev.* 142. note (*n.*)

June, 1809.    operative principle upon many witnesses, and those too

CURTISS        who are believed; they are influenced by the penalty of
v.             the law, by a sense of honour, by habit.   Some persons
STRONG.
               hold, that an oath confers no additional obligation, but
only reminds the witness of his duty.   For aught that
appears, this man was such a character.  So long as
there is *any* tie upon the witness, which will induce him
to speak the truth, he is not to be rejected as incompe-
tent.   If there is any room to doubt, it is safest to let
objections of this sort go to the credibility of the witness.

3. The court erred in refusing to inquire of *Robinson*
with respect to his religious creed, and in admitting
proof of his declarations out of court.   A man ought to
be inquired of himself to know what his religious opi-
nions are.   It is the only correct way of ascertaining
them.   If what he says out of court is to be believed, *à
fortiori* what he says in court is to be believed.   The
former is mere *hearsay*.   It certainly is not the confes-
sion of a party.   It has not the sanction, which is indis-
pensable in the evidence of an indifferent person.   The
latter is the best evidence of which the nature of the
case will admit.

*Daggett*, contra.   1. It is objected, that this inquiry
could not be made under this issue as joined.   If this
were a question in special pleadings, the objection would
not prevail.   In the case of *The Town of Southington* v.
*Bray*, it was decided, that where *non est factum* is plead-
ed to a bond, *duress* may be given in evidence.   But
however the case might be on special pleadings, it cannot
be irregular on an appeal from probate.   It would have
been sufficient, if the party had objected to the witness
*ore tenus*, on his being offered to prove the will.

2. It is contended, that on the facts as proved, *Robin-
son* should have been admitted.   I propose this simple
question.   Is a man a proper witness, who does not
believe in the obligation of an oath?   Let it be remem-

6

bered, that all testimony in our courts must be given under oath or affirmation.  What use can be made of an oath with a man who does not believe in its obligation? What can be more absurd than to admit such a witness ? It is, in fact, admitting a witness without oath.  It is not necessary for me to insist, that a future accountability must be believed; though it is perfectly reasonable that it should be.

*June, 1809.*

*CURTISS*
*v.*
*STRONG.*

The court are not called upon to decide with respect to a *Jew, Turk,* or *Gentoo;* but with respect to a man educated in this *christian* land, who does not believe in the obligation of an oath.

3. There is no authority to show, that a man's opinion respecting the obligation of an oath may not be proved from his declarations out of court.  But it would be the greatest absurdity in nature to examine a man under oath, to ascertain whether he regards an oath.

There is a very clear distinction between the objection commonly made to *hearsay* evidence, and this objection to finding out a man's religious opinions from his declarations and conduct through life.

BY THE COURT.  Every person who does not believe in the obligation of an oath, and a future state of rewards and punishments,  or any accountability after death for his conduct,  is by law excluded from being a witness; for to such a person the law presumes no credit is to be given.  Testimony is not to be received from any person in a court of justice, but under the sanction of an oath. It would therefore be idle to administer an oath to a man who disregards its obligation.  And every person who believes in the obligation of an oath, &c. whatever may be his religious creed, whether *Christian, Mahommedan,* or *Pagan,* or whether he disbelieves them all, is an admissible witness; and may testify in a court of justice, being sworn according to that form of an oath, which, according to his creed, he holds to be obligatory.

The law which requires that testimony shall be given under oath, has something more in view than to lay the witness under an obligation to speak the truth for fear of incurring its penalties. If it had not, there would be no necessity that there should be any appeal to God; and the form of the oath would be very different from its present form. There can be doubt but that the law intended, that the fear of offending God should have its influence upon a witness to induce him to speak the truth. But no such influence can be expected from the man who disregards an oath. He is, therefore, excluded from being a witness.

In this case, the court found, that *Ebenezer Robinson*, who was offered as a witness, did not believe in the obligation of an oath, and in a future state of rewards and punishments, or any accountability for his conduct after death, at the date of the will, or at any time since. He therefore could not be admitted as a witness.

It is objected, that the court erred in the method taken by them to produce the result, in that they admitted witnesses to swear to the declarations of *Robinson* respecting his opinions on the subject of the obligation of an oath. This method, it is believed, is the only correct method that could be taken. We have no other way to learn the opinions and principles of men respecting any subject but from their own declarations respecting their opinions and principles.

But it is said, that the court also erred in not admitting *Robinson* as a witness to prove, that the declarations testified to have been made by him were never made, and to explain the conversations alluded to by the witnesses: and it is claimed, that this is the *English* practice. We find no authority to support such an opinion. It would seem to be incongruous to admit a man to his oath for the purpose of learning from him whether he had the necessary qualifications to be sworn. The objection is, that a person offered as a witness can in no

June, 1809.

CURTISS
v.
STRONG.

case be sworn, because he does not believe in the obligation of an oath, or is an atheist. It would be strange, that the court should immediately admit this man to his oath to ascertain this fact. It cannot be supposed, that when the law was, that a *Mahommedan* or *Pagan* could not be admitted as a witness, that he was first sworn to ascertain this fact.

It is also objected, that the inquiry could not be made by the court, under the allegation that there were not three witnesses to the will. It has not been the course of the court, on appeals from probate, to be governed by the rules of special pleading ; but it is correct that those rules should govern. The inquiry is admissible on the principles of our statute(*a*) under this allegation.

New trial not to be granted.

(*a*) *Stat. Conn.* tit. 129. s. 4. which provides, that the defendant shall have liberty, upon trial of the case on the general issue, to give his title in evidence, or any other matter in his defence or justification, as the nature of the action may be ; excepting only a discharge from the plaintiff, or his accord, or some other special matter, whereby the defendant, by the act of the plaintiff, is saved or acquitted from the plaintiff's demand in the declaration.