ARDEN *against* THE STATE OF CONNECTICUT:

IN ERROR.

The taking of the oath provided for poor imprisoned debtors, falsely and corruptly, in a proceeding to obtain the benefit of that oath, and before a magistrate authorized to administer it, is perjury.

THIS was an information to the county court of *Fairfield* county, against *George Arden,* for perjury.

The information alleged, that *Joseph P. Fitch* and *Abijah Betts* recovered judgment before *Erastus Sturges,* Esq., a justice of the peace, against said *Arden,* and having taken out execution thereon, it was levied on the body of said *Arden,* and on the 26th of *April,* 1835, he was committed to the keeper of the gaol in *Danbury* within the prison, and was lawfully detained therein; that on the same day, said *Arden* made application to take the oath by law provided for poor imprisoned debtors, to *Reuben Booth,* Esq., justice of the peace, and prayed out a citation, returnable to *John S. Blackman,* Esq., justice of the peace, which was duly served on said creditors, and returned; that on the 30th of *May,* 1835, said *Arden* appeared before said *John S. Blackman,* Esq., to take said oath; that no

person appeared to object to the administration of said oath, *Fairfield,* and thereupon said justice administered said oath to said *Ar-* *June, 1836.* *den,* in due form of law ; that said *Arden,* devising and wickedly intending to injure said *Fitch* and *Betts,* and to prevent the due course of law and justice, did, falsely, wilfully and maliciously, take said oath before said justice *Blackman ;* that said oath was material to the question pending before said justice *Blackman ;* whereas, in truth and in fact, said *Arden,* at the time of taking said oath, had goods, chattels and estate in his possession to him belonging, which was not by law exempt from being taken on execution, of the value of seventeen dollars, and more than sufficient to pay said debt or demand for which he was imprisoned, and the officer's fees, *viz.* said *Arden* had in his possession to him belonging, 150 dollars in money, which was not then by law exempt from being taken on execution ; also sundry bank notes of the *Fairfield County* bank, of the value of 200 dollars ; and that said *Arden* has thus committed wilful and corrupt perjury.

To this information the prisoner pleaded, *Not guilty ;* and the jury found him *Guilty.* He then moved in arrest of judgment, for the insufficiency of the information. The court adjudged the information sufficient ; and sentenced the prisoner to confinement in the state's prison, for the term of two years. The prisoner then brought a writ of error in the superior court, which was reserved for the advice of this court.

*Sherman* and *Betts,* for the plaintiff in error, contended, That the offence charged in this information, was not perjury. The definition of that crime given by Lord *Coke,* has never been intentionally departed from. It requires that the oath should have been taken "in a judicial proceeding," and "in a matter material to the issue, or point in question." 3 *Inst.* 163, 4. 4 *Bla. Com.* 137. 2 *Russ.* 1750, 1. Both these essential ingredients are wanting, in the present case. In *Betts* v. *Dimon,* 3 *Conn. Rep.* 107. it was decided, that the administration of the oath in question, is a ministerial, and not a judicial act. "There is nothing," say the court, in that case, "in the mode of procedure, or in the nature of the power exercised, evincing it to be judicial." *P.* 109. Neither was there any issue to be decided, or any point put in issue. The oath was not given *as testimony.* No mind was to be impressed, or af-

*Arden* *v.* *The State.*

*Fairfield,*
June, 1836.

Arden
*v.*
The State.

fected by it. Whether the oath be true, or false, the consequence is the same : if the prisoner *takes* it, he is permitted to go at large, unless the creditor provides for his support.

Whether the oath was lawfully administered, is not the criterion. *Chitty* says, that where an oath is *required by an act of parliament,* but not in a judicial proceeding, the breach of that oath does amount to perjury, unless the statute makes it such in terms. 4 *Bla. Com.* 137. n.

Where a false *affidavit* has been held to be perjury, it was so taken as to become the ground of ulterior proceedings in a court of justice, and was thus a part of such proceedings.

There is no need of extending the rule of law on this subject ; for the taking of a false oath, lawfully administered, is a great misdemeanor, and punishable as such. *Spicer* v. *Read, Hob.* 62.

*Booth* and *Belden,* for the state, insisted, That the offence charged, is perjury. In the first place, the true criterion, on principle, is, whether the oath was lawfully administered ; for the breach of every such oath involves the guilt and danger of perjury. 2 *Conn. Rep.* 44, 5. 49. 56, 7. 1 *Sw. Dig.* 320.

But, secondly, this case is within Lord *Coke's* definition. This is a *judicial* proceeding. Here is process, signed, served and returned ; here are parties litigant ; an issue in substance, if not in form,—a point in question ; an enquiry ; and a judgment, which affects the civil rights of the parties. It operates directly on the remedy of the creditor, and on the personal liberty of the debtor. A record is made, which has the verity of any other record ; and is the subject of review. The principle involved in *Chapman* v. *Gillet,* not only sustains this case, but goes beyond it. In *Massachusetts,* the precise point before the court, has not only been decided, but is considered as settled law. *Commonwealth* v. *Alden,* 14 *Mass. Rep.* 388.

WILLIAMS, Ch. J. The only question in this case, is, whether the falsely taking of the poor debtor's oath, before a magistrate authorized to administer it, constitutes the crime of perjury.

Our statute provides, that when a person, committed to gaol upon civil process, is unable to pay the debt, he may, after giving a prescribed notice to the adverse party, present himself to the justice of peace, to whom such notice is returnable, who

*shall enquire* into the matter, and if no sufficient reason be shown to the contrary, he shall administer to such debtor, the oath usually called the poor prisoner's oath ; after which, the gaoler shall no longer stand charged with the prisoner, unless the creditor shall supply a certain weekly allowance. Can a person be guilty of perjury, by taking this oath ?

If the principles laid down, by a majority of this court, in the case of *Chapman* v. *Gillet,* 2 *Conn. Rep.* 40., are law, there can be little doubt as to the result. *Swift,* Ch. J., there says, it is a sound principle, that where an oath can lawfully be administered, there, false swearing shall be perjury. And again ; it is a first principle, founded in the nature and fitness of things, that swearing falsely, when under an oath lawfully administered, is a crime. *Trumbull,* J. concurred in this opinion. *Smith,* J., says, upon principles of common law, perjury may be committed before any tribunal in which an oath may lawfully be administered ; for where the law will sanction an oath, it will not refuse its aid to punish a wilful and corrupt violation of it. In this opinion, *Baldwin* and *Brainard,* Js. concurred. *Hosmer,* J., says, to constitute perjury, there must be the violation of a lawful oath, taken before a competent jurisdiction. And in pursuance of these principles, and of a former decision that perjury could be committed before arbitrators, the court held, that this crime might be committed before a church meeting.

The supreme court of *South-Carolina* have also holden, that a false oath, administered by a magistrate before arbitrators, might subject the party to the charge of perjury. *State* v. *Stevenson,* 4 *McCord,* 168. And judge *Johnson,* in delivering the opinion of the court, in that case, says, that the case of *Chapman* v. *Gillet* contains a principle, which, he thinks, is sustainable on the clearest principles of sound reasoning, and which is assented to, by the minority of the court. It is, that when an oath is administered, in the course of a proceeding sanctioned by the express enactment of the legislature, or by the common consent and usage of mankind, and from which a temporal loss to any one arises, it is perjury to swear falsely.

It is claimed, that these opinions go farther than the common law will warrant. Without determining that point, let us look at the *English* authorities, to see if they will not support this information. Perjury, as defined by Lord *Coke,* is, when

*Fairfield,*
*June, 1836.*

*Arden*
*v.*
*The State.*

a lawful oath is administered, by any that hath authority, to any person, in a judicial proceeding, who sweareth absolutely and falsely, in a matter material to the issue or cause in question, by their own act, or the subornation of others. 3 *Inst.* 163. *Hawkins* says, it seemeth to be a wilful, false oath, by one, who, being lawfully required to depose the truth, in any proceeding *in a course of justice*, swears absolutely to a matter of some consequence to the point in issue, whether he be believed or not. *Hawk. P. C. lib.* 1. c. 69. s. 1. *Chitty* adopts Lord *Coke's* definition; and *Russell* speaks of a proceeding in a court of justice. 2 *Russ.* 1751. His *American* editor concurs with Judge *Johnson,* in the case before cited, that the word *court,* is substituted for the word *course,* of justice. And it is believed, that those who speak of a judicial proceeding, and of a proceeding in a court of justice, mean the same thing. It is apparent it cannot be intended, that the oath must be administered before a court. It need not be before a court of record. 2 *Roll. Abr.* 257. It may be before a court baron. 1 *Mod.* 55. *Winch,* 3. Or a court of requests. *Hut.* 34. Or an ecclesiastical court. *Cro. Eliz.* 609. 1 *Sid.* 454. Or before commissioners. 1 *Show.* 397. *Cro. Car.* 97. Or in an answer in chancery. *Cro. Car.* 321. 327. 353. *Cro. Eliz.* 907. 2 *Burr.* 1189. Or upon a complaint to the Chancellor, on account of the arrest of one of the officers of his court. 1 *Term Rep.* 63. So too, it may be upon some collateral matter, not directly connected with the issue of a cause on trial, as an *affidavit* to hold to bail. *Peake's Cas.* 112. Or when one, who offers himself as bail, swears his property to be greater than it is. *Cro. Car.* 146. And the crime may be committed, in some court of justice having power to administer oaths, or before some magistrate or proper officer invested with similar authority, *in some proceeding relative to a civil suit,* or criminal prosecution. 4 *Bla. Com.* 137.

In the case before the court, it is not denied, that the oath was false, the intention wilful, the oath lawfully administered, and the assertion absolute. But it is denied, that it is in the course of judicial proceeding, and that it is material.

In support of the first proposition, it is said, that it was decided, in the case of *Betts* v. *Dimon,* 3 *Conn. Rep.* 107., that the magistrate in such a case acted not judicially, but ministerially; and therefore, it cannot be perjury. But the adminis-

*Fairfield,*
June, 1836.

Arden
*v.*
The State.

tration of an oath to a witness giving a deposition, or to a party making an *affidavit* to procure a continuance of his cause, or to bail as to the amount of his property, is not a judicial, but ministerial act; and yet it is not to be doubted, that the deponent might be guilty of perjury. For all such false oaths as are taken before those, who are, in any way, intrusted with the administration of public justice, in relation to any matter before them in debate, are properly perjuries. 1 *Hawk. P. C. lib.* 1. *c.* 60. *s.* 3.

Here, the magistrate had a general power to administer oaths, and the particular power to administer this oath. He was intrusted with a portion of the administration of public justice; for he was to decide, in some capacity, whether the oath should be administered. The question is not so much in what character the magistrate acted, as what was to be the effect of his act : would it affect the course of public justice ? For that purpose we must look at the situation of these parties. After the usual course of litigation, the creditor had obtained a judgment and execution against his debtor, and had confined him in prison. The debtor wished to be relieved from the inconvenience of this judgment, and to deprive the creditor of one of those means of satisfying it, which the law had given him ; and for this purpose, took the oath which has given rise to this inquiry ; and the effect of it is, to relieve him from the operation of a judicial sentence, and to deprive the creditor of the benefit of it. Is not, then, the immediate effect to interfere with the course of public justice ?

Suppose the application were for a new trial, or an *audita querela,* or an *habeas corpus,* and a similar oath had been taken before a magistrate ; could there be a doubt that it would be perjury ? The effect, in some of these cases, might be greater ; but as it respects this question, they seem to be of a similar character. They all are intended, after final judgment, to vary the situation and rights of the litigant parties, and to deprive the creditor, in a greater or less degree, of the fruits of that judgment. If then, this be not, technically speaking, a judicial proceeding, the court cannot say it is an extra-judicial proceeding, but on the other hand, they think it is a proceeding calculated materially to affect the course of justice.

It was further said, that here was no point in issue, or in the language of the law, nothing in debate between these parties.

*Fairfield,*
*June, 1836.*

Arden
*v.*
The State.

So far as regards a formal issue, this is true ; and that will apply to every oath collateral to the question at issue.    But here, the real question between the parties, was, shall, or shall not, this debtor be liberated from his imprisonment, unless the creditor will support him ?    A question of deep interest to one party, and of some importance to the other ; a question which the forms of proceeding cannot conceal.

It was further said, that the debtor could not be considered as a witness, nor what he said, testimony ; as no mind was to be affected by the result, and no judgment the consequence.    By the common law, the false oath of a party, either in a court of law or of equity, may be perjury.    1 *Hawk. P. C. c.* 69. *s.* 5. And a party who is permitted to wage his law, is equally guilty of perjury as any witness who might be contradicted.    *Noy,* 128.

As to the effect of this oath ; that it does not operate upon mind, or influence the judgment, as the justice cannot inquire into its truth, it may be remarked, in the first place, that the effect of the false oath, does not change its character, whether it obtain credit or not, or whether it is the occasion of injury to the person against whom it is given ; for the prosecution is not grounded on the inconvenience an individual may sustain, but on the abuse and insult to public justice.    1 *Hawk. P. C. c.* 69. *s.* 8. cites 2 *Leon.* 211. 3 *Leon.* 230.    Now, if it may be perjury, when it is entirely harmless, because it gives no credit or has no effect, it would seem, that it could not but be perjury when every word must be received as true, and the law gives it full effect.

In the second place, the oath does have an effect, and a decisive effect, upon the result.    Without it, he who takes it must remain in prison, and with it, he must be discharged, unless support is furnished.    This is the sentence, or conclusion, of the law upon this fact ; and it is no less so, because the magistrate can pronounce no other.    In other cases, the conclusion of law, if properly drawn, necessarily results from the facts disclosed.    Here, it is so clear, that there can be no mistake.

It was also said, this differs from an *affidavit* of bail or of the party, as they form the ground of future proceedings.    In both cases, the party taking the oath, has an object to accomplish, in relation to a claim of law impending over him, or operating upon him.    In both cases, he seeks to avert the course of jus-

tice, by his own oath, or that of his bail. In the one case, he hopes to attain it; in the other he must accomplish it. In the one case, that is only one mode of effecting the object; in the other, it is the only possible mode. There is, then, no solid ground of distinction in the cases.

The court, therefore, are of opinion, and advise the superior court, that the offence charged in this information is perjury; and that there is no error in the judgment of the county court.

In this opinion the other Judges concurred.

Judgment to be affirmed.