## THE STATE OF CONNECTICUT *vs.* JOHN DUDICOFF.

Third Judicial District, New Haven, January Term, 1929.

*WHEELER, C. J., HAINES, HINMAN AND BANKS, JS.

Argued January 18th—decided April 6th, 1929.

WHEELER, C. J.   The accused was tried and found guilty under both counts of the information of obtaining money under false pretenses and from the judg-

---

* By agreement of counsel this case was heard by four justices.

ment, entered upon the verdict, for a term of not less than two nor more than three years on the first count, and two years on the second count, sentences to run concurrently, the accused appeals because of the refusal of the court to permit him to testify and of the rulings made upon such refusal. In place of the summary of the rulings made the court has made as a part of the finding headed III, some eight pages of the record containing the stenographic transcript of all that took place in the court at the time of these rulings. It will be necessary to summarize this record in order to have before us the rulings as made, the refusals of the accused to comply with them and such statement of the occurrences of the trial as will fairly present all of the considerations of record from which the trial court must have drawn the conclusions it states under part IV of the finding to which we shall later refer.

The accused was offered as a witness in his own behalf. Upon the clerk inquiring of the accused whether he would swear or affirm, the court inquired of the accused, "Do you believe in God?" to which the witness replied, "I believe in God and Jesus Christ," and the court ordered the witness to raise his right hand and take the customary oath. The witness replied, "Mr. Judge, I cannot swear. In this Chapter 5, Jesus Christ says"—. The court then said, "If you are not willing to take the oath, then you cannot be admitted as a witness." The witness said, "Excuse me, please, Mr. Judge. My law of the church won't let me," and the court repeated its ruling. His counsel intervened that his client wished to affirm. The court refused to permit him to affirm. The accused said, "I will die but I won't do it." At the request of counsel for the accused the court permitted him to confer with his client. Prior to this the court stated that "The affirmation may be used when the person does not believe in the

existence of a Supreme Being." His counsel claimed the court had under General Statutes, § 2198, the right to permit this witness to affirm instead of swear. After conference with the accused his counsel stated that he refused to take an oath because he claimed that his Bible or the faith in which he believes, absolutely prevents him from making such an oath and that he would like to have read from the Bible a verse on which the accused based his refusal as a priest to take the oath. "Now," said counsel, "your Honor could have him affirm so that he could testify. . . . If he makes a wrong statement or a false statement, he is in the same position if he affirms or whether he takes the oath." The court permitted the reading of the verses in Matthew V, viz: "But I say unto you, Swear not at all; neither by heaven; for it is God's throne: Nor by the earth; for it is his footstool; neither by Jerusalem; for it is the city of the great King. Neither shalt thou swear by thy head, because thou canst not make one hair white or black. But let your communication be, Yea, yea; Nay, nay: for whatsoever is more than these cometh of evil." Counsel for the accused on other occasions asked the right to have the accused affirm, but the court refused upon the ground already stated. Counsel took exception to the refusal of the court to permit the witness to testify by any other ceremony which may be binding upon the conscience of the witness and on the further ground that the witness has scruples of conscience in taking the oath as directed by the court and that the refusal to permit him to testify is in violation of the Constitution of the United States and that of the State of Connecticut.

Under General Statutes, § 2198, the usual manner of administration of the oath may be dispensed with when any person shall object to taking it in this form by reason of scruples of conscience; or when the au-

thority by whom the oath is to be administered shall have reason to believe that any other form of ceremony will be more binding upon the conscience of the witness such authority may permit or require any other ceremony to be used. No other form of ceremony was requested by counsel for the accused and there is no finding of the court's belief that another ceremony would be more binding, so that this feature of the section is not involved in the rulings excepted to.

General Statutes, § 2199, provides that when a person required to take an oath declines from scruples of conscience to take it in the usual form, or when the court is satisfied that the witness does not believe in the existence of a Supreme Being, a solemn specified affirmation may be administered. There are two cases in which a witness may be permitted to affirm, (1) When he declines to take the oath from scruples of conscience, and (2) When the court finds that he does not believe in a Supreme Being. The latter ground is not before us for the court did not so find but on the contrary accepted as correct the statement of the accused that he did believe in a Supreme Being. The accused insisted that he declined to take the oath from scruples of conscience. Whether the determination of the existence of his scruples was to be made by the court or to rest upon his own assertion, the trial court was in error in its construction of the statute as denying to the accused the right of affirmation so long as he believed in a Supreme Being. Under such an interpretation of the statute a Quaker could not be a witness since his religious creed prevents him from taking an oath as a witness.

But it is said the court has found that the accused while he declined to swear as a witness from scruples of conscience did not in fact entertain such scruples but was feigning to have them as a mere theatrical

gesture. The court accepted the statement of the accused that he believed in a Supreme Being and denied him the right of affirmation because of that belief. There is nothing in the stenographic transcript of the occurrences of the trial under III of the finding upon this point which indicates that the court denied the accused the right of affirmation because his claim of scruples of conscience was not sincerely entertained by him. The denial of this statutory right of affirmation was placed upon the sole ground that so long as the accused believed in a Supreme Being he must take the usual oath or leave the witness stand. The trial court ruled repeatedly upon this point and invariably the same. The rulings as made state the ground of the court's ruling to be its construction of this statute. In part IV of the finding is the finding that the declination of the accused did not arise from any scruples of conscience. It may be that the trial court's diagnosis is the correct one but it cannot be drawn from the occurrences at the time of the ruling so far as the printed record goes, and the many statements of the ruling of the court give no slightest intimation that this was the ground of the ruling, but quite the reverse. The accused and his counsel had no opportunity to controvert this position, the State's Attorney did not advance it, the court did not present it. We cannot say that the accused, had he been given the opportunity, might not have overcome the court's belief, but in any event he had the right to be given this opportunity. The court's ruling also may have prevented him from attempting to show that any form of ceremony would be more binding upon his conscience. There is a limitation in § 2199 of the court's satisfaction to the finding of the nonbelief in the existence of a Supreme Being. There is no such limitation in the other instance where an affirmation is pro-

vided for in place of the oath, that is in the case where the declination is upon the ground of scruples of conscience. If the statute had intended that the court should be satisfied that the witness in fact entertained scruples of conscience presumably it would have made this limitation apply to both instances when an affirmation may be administered. When the trial court states in part IV of the finding that the accused did not entertain scruples of conscience it is finding that as a fact; we are asked to hold that the statute intends this finding to be made by the court rather than to have the statement of the accused that he had such scruples accepted by the court without its further proof. We think the latter view is the correct one.

Prior to the case of *Omychund* v. *Barker,* 1 Atkyn, 21, decided in 1744, only a Christian oath would be accepted for a witness in English courts; the origin of this idea is said by high authority to be veiled in mystery. Under this decision the oath was held of binding force when taken by any person according to the rites of his own religion. This presupposes a religion and hence a belief in God. Through, it is said, an inaccuracy in the printing of this decision belief in a future state was added as a condition to the ceremony of taking the oath. With the growth of religious tolerance and the necessity of permitting Quakers, unbelievers and atheists to testify as witnesses England first permitted Quakers to affirm as early as 1688, but this sect objecting to profaning the Deity by making the affirmation in His name, the right of affirmation in its present form was ultimately prescribed. Later in the reigns of George II and Victoria, unbelievers and atheists were accorded the right of affirmation as witnesses. In accordance with what was then thought to be the common law we held that a witness who did not believe in a Supreme Being and a future state could not be a

competent witness. *Atwood* v. *Welton,* 7 Conn. 66, 73. The early ceremony in administering the oath, as found in the Revision of 1784, prescribed, "That no person shall be compelled, or obliged to take any Oath, but such as the General Court hath considered, allowed, and required; nor to use any other Ceremony in taking their Oaths respectively, than the holding up the Hand, as hath been accustomed." Revision of 1784, Oaths, p. 187. The right of affirmation by Quakers was granted in 1784. There was added to the ceremonial procedure, "but when any person, by reason of scruples of conscience, shall object to such ceremony, he shall be permitted to use any proper ceremony to which he has been accustomed, in such cases, or such as the court, or authority, by whom the oath is to be administered, shall direct." This addition is found in the Revision of 1821, Title 72, page 369, § 32.

There was also enacted in the Public Acts of 1819, Chapter 28, and found in Title 72, § 33, page 369, of the Revision of 1821, the provision relating to affirmation, "Whenever any person, required by law to take the oath prescribed for witnesses, shall decline to take it, in the usual form, from scruples of conscience, a solemn affirmation may be administered to him" in a form stated.

In Chapter 90 of the Public Acts of 1855, page 111, there was added to the ceremony to be used in administering oaths, "or whenever the court or authority by whom the oath is to be administered, shall have reason to believe that any other or additional ceremony will be more binding, or obligatory upon the conscience of the witness, it shall be the duty of such court or authority to permit or require any proper ceremony to be used, according to the circumstances of the case." Except in form we find that no other changes have been made in regard to the ceremony in administering

the oath and in the affirmation until that made in Chapter 72 of the Public Acts of 1886, by adding to the instances when an affirmation might be taken, "or when the court is satisfied that any person called as a witness does not believe in the existence of a Supreme Being." This same chapter also amended the statute (§ 36, page 440, Revision of 1875) providing that a witness should not be disqualified by reason of interest or conviction of crime, "or of his disbelief in the existence of a Supreme Being."

Since 1830 there had existed a statute that: "No person who believes in the existence of a Supreme Being shall, on account of his religious opinions, be adjudged an incompetent witness." The study of these statutes indicates a broadening spirit of toleration and the purpose to deprive no person of the right to be a witness because of his scruples of conscience or reluctance to take the customary oath. We quote in the footnote the present sections of the statutes relating to the ceremony in administering the oath and in affirmation together with a part of § 5705.

Sec. 2198. CEREMONY. The ceremony to be used, by persons to whom an oath is administered, shall be the holding up of the right hand; but when any person, by reason of scruples of conscience, shall object to such ceremony; or when the court, or authority by whom the oath is to be administered, shall have reason to believe that any other ceremony will be more binding upon the conscience of the witness, such court or authority may permit or require any other ceremony to be used.

Sec. 2199. WHEN AFFIRMATION MAY BE USED. When any person, required to take an oath, shall, from scruples of conscience, decline to take it in the usual form, or when the court is satisfied that any person called as a witness does not believe in the existence of a Supreme Being, a solemn affirmation may be administered to him in the form of the oath prescribed, except that instead of the word "swear" the words "solemnly and sincerely affirm and declare" shall be used; and instead of the words "so help you God" the words "upon the pains and penalties of perjury" shall be used.

Sec. 5705. INTERESTED WITNESS NOT DISQUALIFIED; CREDIBILITY. No person shall be disqualified as a witness in any action by reason of

The States of the Union were somewhat slower than England in adopting the more liberal provisions giving witnesses who were unbelievers, or objected to the customary oath from scruples of conscience, the right to affirm. But at this time every State, with perhaps one exception, permits any person having scruples against swearing to affirm. Equal credit is given the evidence of the witness whether he swear or affirm. And the same penalty is imposed for false swearing by the witness in either case. And in at least two thirds of the States the unbeliever, the atheist and the infidel may affirm.

Our own form of affirmation, that the witness shall "solemnly and sincerely affirm and declare," means no more (for example) than that of Massachusetts that he shall declare, or New Jersey that he shall allege. No one of these forms means that the truth or sincerity of the declaration or allegation that the witness has scruples of conscience is subject to the uncontrolled discretion of the trial court. The question is not one of the mere ordinary competency of a witness, but whether, when the witness declares he has scruples of conscience, the court, without any facts before it, except the statement of the witness and his demeanor and his own statement that he believes in a Supreme Being, can find that he has no scruples of conscience and order him to take the customary oath, or leave the stand. Even when the ordinary competency of a witness is involved if an erroneous view of a legal principle is taken the ruling is subject to review. *Commonwealth* v. *Mullins*, 84 Mass. (2 Allen) 295, 296.

The question whether the trial judge shall determine upon a finding as to the competency of a witness whether he has scruples of conscience or a belief in a

his interest in the event of the same as a party or otherwise; or of his disbelief in the existence of a supreme being.

Supreme Being, from the witness' declarations, or from extraneous evidence, or from his own opinion formed upon consideration of the statement of the witness in the light of his demeanor, seems not to have been passed upon by this court, except in *Curtiss* v. *Strong,* 4 Day, 51, which antedated the statute of 1821. Mr. White in his article, Oaths in Judicial Proceedings, in 42 Amer. Law Register (N. S.) 373, says, at page 424: "In Great Britain and her colonies and in all the American states evidence received on oath and that received on affirmation (if given by those having scruples against swearing) is accorded equal weight. . . . It is customary for the court crier to administer the affirmation without any interference either by court or attorneys merely upon a request by the witness." We have never known a different practice pursued in this State. The finding of a scruple of conscience must be governed by the same principle and the same method.

In *McFadden* v. *Commonwealth,* 23 Pa. St. 12, 17, Black, C. J., writes: "When a witness is objected to for defect of religious principle, the rule is to let him speak for himself, and if he professes faith enough to give a religious sanction to his oath, his testimony is taken." The same rule must hold if the witness professes scruples against swearing and requests that he be permitted to affirm. "If he [the witness] avow his unbelief," says Mr. White in the article to which we have referred, "he is to be excluded; if he deny it, he must be admitted even though there may be extrinsic evidence tending to show unbelief in the past. There is not entire unanimity on this point, but the great weight of authority is in favor of the law as stated." Our early case, *Curtiss* v. *Strong,* 4 Day, 51, held that this fact must be proved by extrinsic evidence, a ruling made in reliance upon the English common law rule as

then understood; in fact this was "a survival of the intolerance of the time of Lord Coke."

We cannot find from extraneous evidence, or from the lips and conduct of the witness, whether he has scruples of conscience against swearing, unless we search the relations between the witness and his God. That should remain free from judicial inquiry when the single issue is whether he will speak the truth, and the law holds either method, by swearing or by affirmation, equally trustworthy.

The Supreme Court of New Hampshire supports this view in *Free* v. *Buckingham*, 59 N. H. 219, 225, saying: "But it is not customary in modern practice to permit an inquiry into a man's peculiarity of religious belief. This is not because the inquiry might tend to disgrace him, but because it would be a personal scrutiny into the state of his faith and conscience contrary to the spirit of our institutions." New Hampshire Bill of Rights, Articles 4 and 5; Constitution of United States, First Amendment. The steadfastness of the Quakers in refusing to swear because of their belief that it was a profanation of Deity finally won for them the right of affirmation in deference to their scruples of conscience and for many years gave to them the distinction of being the only sect known to English law having this right. *Atcheson* v. *Everitt*, 1 Cowper, 382, 383.

The refusal to swear because of scruples of conscience is not uncommon to the trial court room. "Practically speaking," says a Texas court, "we know that there are a number of persons in our State, living in almost every community, who have conscientious scruples against taking an oath. It is against their religion, but they are willing to affirm, and this is the manner most binding upon their consciences. Among these are good citizens, and as well qualified to sit on

juries as any other class; and we know of no reason why they should be excluded, when they are willing to take that manner of oath (an affirmation) the most binding upon their consciences." *Riddles* v. *State* (Tex.) 46 S. W. 1058, 1060. Wigmore on Evidence (2d Ed.) Vol. 3, § 1827, page 876, states: "Until the 1800s . . . three classes . . . were excluded from testifying, . . . [1] adults having atheistical belief, [2] infants lacking any . . . belief, and [3] adults having the requisite belief but forbidden by conscience [3] to take an oath." The footnote to [3] is, "According to the Scriptures 'Swear not at all' (Matthew, Chap. V, verse 34)." This is the verse from the Scriptures upon which the accused based his scruple of conscience.

Upon the reasonable construction of our statute, the weight of authority, the better reasoning, sound principle and approved practice, we are obliged to conclude that the trial court erred in denying the accused the right to affirm and in excluding him as a witness.

There is error and a new trial is ordered.

In this opinion the other judges concurred.