STATE OF CONNECTICUT *v.* PHILIP M. SALAFIA

SUPERIOR COURT          NEW LONDON COUNTY          FILE No. 8373

STATE OF CONNECTICUT *v.* STANLEY J. RADGOWSKI, JR.

SUPERIOR COURT          NEW LONDON COUNTY          FILE No. 8374

STATE OF CONNECTICUT *v.* ROBERT A. GUIHER

SUPERIOR COURT          NEW LONDON COUNTY          FILE No. 8375

STATE OF CONNECTICUT *v.* THEODORE F. RIGGAR

SUPERIOR COURT          NEW LONDON COUNTY          FILE No. 8376

Memorandum filed January 20, 1971

*Edmund W. O'Brien,* state's attorney, for the state.

*George Gilman,* of Norwich, for the defendant Salafia.

*Milton L. Jacobson,* of Norwich, for the defendant Radgowski.

*Allyn L. Brown, Jr.,* of Norwich, for the defendants Guiher and Riggar.

I

SHEA, J. Each of the four defendants has moved to quash the first count of his information, which alleges the crime of perjury in violation of General Statutes § 53-143. The factual basis for the charge as set forth in each information is the testimony given under oath at a hearing before the coroner for New London County on June 12, 1969, related to the deaths of Gene and Robert Perkins.

The motions to quash this count filed by each defendant rely upon the claim that the coroner's hearing, at which the perjury is alleged to have occurred, is not a proceeding to which § 53-143, entitled "Perjury and subornation of perjury," applies. This statute reads: "Any person who wilfully or corruptly swears, affirms or testifies falsely to any material matter when an oath or affirmation is required by law, or who unlawfully and corruptly procures another so to do, shall be imprisoned not more than five years . . . ." The defendants claim that the coroner's duty of investigating fatalities for possible crimes permits him to obtain information from many sources other than duly sworn witnesses, unlike court proceedings, in which all evidence must be given under oath or affirmation by rule of prac-

tice or by established judicial precedent. Practice Book § 224; *State* v. *Dudicoff,* 109 Conn. 711. They assert that the coroner could have permitted the defendants to relate their stories to him without the necessity of an oath and, therefore, that the coroner's hearing was not an occasion "when an oath . . . is required by law," to which § 53-143 is expressly limited.

At common law, perjury was defined as the wilful giving of false testimony on a material point in a judicial or related proceeding by a person to whom a lawful oath had been administered by a competent authority. 3 Wharton, Criminal Law and Procedure § 1290. Coke, Mansfield, Blackstone and other eminent authorities agree that to constitute perjury there must be a violation of a lawful oath, taken before a competent jurisdiction. 3 Co. Inst. 165 (6th Ed.); 4 Blackstone, Commentaries \*137; 1 Hawkins, Pleas of the Crown, pp. 172–73 (1716); *The King* v. *Aylett,* 99 Eng. Rep. 973, 976 (K.B.). There was also at common law the separate crime of false swearing, which involved false statements under oath in nonjudicial proceedings. 41 Am. Jur. 5, Perjury, § 3; note, 8 Ann. Cas. 881, 882; 3 Wharton, op. cit. § 1295.

The early statutes of this state specified various punishments for perjury, including, in less permissive times, placing the culprit in the public pillory for one hour with his ears nailed, but the crime was not defined. Statutes, 1796, p. 339; Statutes, 1821, p. 159 § 44; Statutes, 1849, p. 232 § 55; General Statutes, Rev. 1866, p. 260 § 97. The common-law definition of the crime was found to apply to testimony before arbitrators, before a church tribunal, before a grand jury, and in taking the poor debtor's oath before a justice of the peace. *Lyman* v. *Wetmore,* 2 Conn. 42 n.; *Chapman* v. *Gillet,* 2 Conn. 40; *State* v. *Fasset,* 16 Conn. 457; *Arden* v. *State,* 11

Conn. 408. "The true criterion is, that perjury may be committed before any court, tribunal, or person, who has a right to administer an oath for the purpose of examining into the truth of facts." 2 Swift, Digest (Rev. 1871), p. 348. "[F]or where the law will sanction an oath, it will not refuse its aid to punish a wilful and corrupt violation of it." *Chapman* v. *Gillet, supra,* 49 *(Smith, J.).* These statements omit any reference to the common-law restriction of perjury to judicial proceedings or those involving the administration of justice. 4 Blackstone, Commentaries *137; 1 Hawkins, loc. cit. The judges, however, recognized this limitation, the issue being whether the particular occasion for the false testimony constituted a judicial proceeding. Cf. *Chapman* v. *Gillet, supra,* 50–66 (dissenting opinions).

The first legislative attempt to define the crime of perjury appears in the 1875 Revision, at page 506 § 1, as follows: "Every person, who shall, upon oath or affirmation legally administered to him, willfully and corruptly testify or affirm falsely to any material fact, in any cause or proceeding in which such oath or affirmation may be necessary or required by law or usage, . . . shall be imprisoned . . . ." The inclusion of the words "or usage" gave a broader scope to the statute than the common-law crime of perjury, which was limited to judicial proceedings or related matters. Such an expansion of the common-law definition would have been necessary, perhaps, to reconcile the view of the majority in *Chapman* v. *Gillet, supra,* in which the false testimony occurred before a church tribunal with no legal authority. The statute was soon amended, however, to eliminate the reference to "usage," and it was simplified in other respects to read: "Every person who shall wilfully or corruptly swear, affirm, or testify falsely to any material matter where an oath or affirmation is required by law . . . shall be im-

prisoned . . . ." Public Acts 1878, c. 3 § 1. This enactment left the statute in substantially its present form (General Statutes § 53-143), except for some changes in wording made in later years and of no particular significance in this case.

It seems a fair conclusion that the effect of the 1878 amendment was to revert to the common-law definition of perjury, which limited the crime to judicial proceedings. The words, "where an oath . . . is required by law," are appropriate for that purpose, although they might possibly be construed as embracing also the separate common-law crime of false swearing in nonjudicial situations where an oath is necessary. Such a possible interpretation of the statute has never been asserted in this state, and the enactment of specific statutes dealing with particular instances of false swearing, e.g., an elector before the registrar of voters, militates against such a broad view. General Statutes § 9-358. Whether or not the legislative purpose was to go beyond the common-law crime of perjury, it is improbable that the intention was to narrow the scope of that crime as defined by the judicial precedents of this state, which were consistent with the common-law rule, limiting perjury to proceedings involving the administration of justice. "For all such false oaths as are taken before those, who are, in any way, intrusted with the administration of public justice, in relation to any matter before them in debate, are properly perjuries." *Arden* v. *State*, 11 Conn. 408, 413.

It is clear that the office of coroner performs an important function in the administration of justice and that a hearing before the coroner is to that extent a judicial proceeding. At common law, the office, which was created about a century after the Norman invasion, was highly regarded, no less a judicial personage than the Lord Chief Justice of the

King's Bench occupying the post of chief coroner of England. 18 C.J.S., Coroners, § 2. Coroners had power to require the attendance of witnesses at inquests, to put them on their oath, and to examine them. Our statutes, which authorize the coroner to compel witnesses to attend and testify, and also to punish them for contempt, are in affirmance of the common-law conception of that office. General Statutes §§ 6-70, 6-71; *State* v. *Buteau,* 136 Conn. 113, 121; *State* v. *Coffee,* 56 Conn. 399, 414.

The power to compel "testimony" imports the power to require an oath of a witness, because the word is usually defined as meaning oral statements of a person under oath. Webster, Third New International Dictionary; Black, Law Dictionary (4th Ed.). Universally, witnesses at a coroner's hearing have testified under oath. Although several officials, such as notaries public, have a general authority to administer oaths, the authority given to coroners to administer oaths is restricted to "any matter before them." General Statutes § 1-24. Apart from the swearing of witnesses at a coroner's hearing, it is difficult to perceive any other occasions for the exercise of the authority conferred, except for the rare occasions when the oath prescribed for a coroner's jury would be intoned. General Statutes § 1-25. From ancient times it has ever been held essential that witnesses in court proceedings swear or affirm before giving evidence. *Curtiss* v. *Strong,* 4 Day 51, 56; *State* v. *Dudicoff,* 109 Conn. 711, 716. There is little reason to warrant a different procedure at a coroner's hearing.

The defendants have relied in argument upon the absence of any rule or statute expressly requiring that witnesses at a coroner's hearing be sworn, in contrast to the rule of practice directing the clerk to administer the oath to each witness at a trial in court. Practice Book § 224. This rule of practice

first appeared in 1899 and cannot, therefore, have been the origin of the necessity for an oath or affirmation by a witness which had been recognized in this state almost a century before. *Curtiss* v. *Strong,* supra. It might be argued that the perjury cases prior to the 1878 codification of that crime rested upon a different state of the law, but it is inconceivable that two decades would elapse following that enactment during which perjury could not have been prosecuted because no statute or rule could be found directing witnesses to be sworn.

The defendants claim also that the coroner, in performing his function under the statutes in force at the time, was not limited to evidence submitted at the inquest. When he was notified of a suspicious death by the medical examiner or others, he might "view and take charge of the body and make all proper inquiry respecting the cause and manner of death." General Statutes § 6-57. "For the purpose of securing evidence," he was empowered to "enter any and all places in his county." § 6-70. He was under a duty to obtain statements from the victims of criminal acts who were dangerously wounded or injured and likely to die. § 6-67. The provisions for notice of the inquest to the suspected criminal and for his right to have counsel present (§ 6-62), for return of the result of the inquest to the clerk of the Superior Court (§ 6-64), and for preservation of the testimony of witnesses (§ 6-73) afford little support for the claim that the coroner could properly have made his finding by interviewing the defendants informally or neglecting to administer the oath. Even if such a claim were sound, where the coroner, in the lawful exercise of his authority, has chosen to perform his official duty by placing a witness under oath, clearly it is an occasion "when an oath or affirmation is required by law." § 53-143. The witness could be compelled to attend the hearing and

could not refuse to testify under oath without being subject to contempt. § 6-70. He would be under the same legal compulsion as a witness in a courtroom, once the coroner, acting under the lawful powers of his office, directed him to be sworn.

It is concluded, therefore, that the perjury statute, § 53-143, is applicable to testimony of a witness at a coroner's hearing, and the motions to quash the first count of each information are denied.

## II

The defendants have also moved to quash the second count of the informations, which alleged "the common-law crime of obstructing the administration of justice," claimed to be punishable under General Statutes § 54-117. The grounds relied upon by the defendants are (1) that the facts alleged do not constitute the crime charged; (2) that the common-law crime of obstructing justice does not exist in this state; (3) that, if the crime does exist, it is unconstitutionally vague; and (4) that the crime, if it exists, is only a misdemeanor, which is barred by the statute, § 54-193, limiting prosecution for such offenses to one year after the event.

It is clear that, at least until October 1, 1971, the effective date of the new criminal code, the criminal law of this state included both statutory and common-law offenses. General Statutes § 54-117; *State* v. *Schleifer*, 99 Conn. 432, 443; *State* v. *Danforth*, 3 Conn. 112. It is also well established that obstructing the administration of justice was a crime at common law. 3 Wharton, Criminal Law and Procedure § 1277; 39 Am. Jur. 502, Obstructing Justice, § 1. Particular illustrations of the crime include such activities as making statements concerning a pending court proceeding, fomenting litigation, resisting process or orders of the court, and tamper-

ing with witnesses, evidence, or jurors. 3 Wharton, op. cit. §§ 1277–1283. In this state, there is authority for recognition of the crime in the form of abusing or resisting a court officer in the performance of his duties. 2 Swift, System, p. 334 (1796). Some authorities include perjury and false swearing as instances of the crime of obstructing justice. 1 Burdick, Law of Crime §§ 269, 283. It also appears, however, that both of these crimes were indictable as separate common-law offenses. 3 Wharton, op. cit. § 1295. In fact, the development of the law in this state has carved out of the common-law crime of obstructing justice a number of distinct offenses for which different punishments are provided. Hindering the appearance of a witness (General Statutes § 53-148), attempting to influence jurors improperly (§ 53-144), making a false complaint to the police (§ 53-168), and resisting an officer (§ 53-165) are specific statutory offenses, although they may have been derived from the general common-law offense of obstructing justice. Obviously, it would be repugnant to the legislative intention to permit a prosecution for one of these offenses to be maintained under the common-law form as an obstruction of justice punishable by the different penalties applicable to "any high crime or misdemeanor at common law." § 54-117. Where a statute deals with an entire subject matter, it is generally construed as abrogating the common law relating to that subject. *Lutz* v. *State,* 167 Md. 12; 15 Am. Jur. 2d 813, Common Law, § 16. When there is a disparity in the punishments applicable to the offense as a common-law crime and as a statutory violation, it would be a palpable absurdity to hold that the common law had not been supplanted by the statute. *State* v. *Collins,* 28 N.M. 230; *State* v. *One Ford Automobile,* 151 Ark. 29. If the punishment for a common-law crime is prescribed by a statute pertaining specifically to

that offense, the statute governs the punishment for the crime exclusively. *Bentley* v. *Commonwealth,* 269 S.W.2d 253 (Ky.).

The second count of the information alleges, as constituting the crime of obstructing justice, exactly the same facts as are pleaded in the first count in support of the perjury charge. The purpose of this duplication may have been to provide an alternative ground of prosecution in the event that the first count, which relies upon the perjury statute, should be ruled invalid. Commendable as this foresight may be, since the court has now ruled that the perjury statute is applicable, it cannot expose the defendant to the hazard of a substantially greater penalty by sanctioning the additional prosecution for obstructing justice in the second count, based upon the identical acts. In providing a maximum of five years' imprisonment for perjury in violation of § 53-143, the legislature has precluded any prosecution for that crime as a common-law offense carrying a fifteen-year maximum penalty under § 54-117.

In a case closely analogous to this one, it has been held that "[o]ne convicted of perjury may not be convicted of obstructing public justice on the same evidence in both instances." *Commonwealth* v. *Russo,* 177 Pa. Super. 470, 484. "Inasmuch as perjury itself is one of the means of obstructing justice, if one is convicted on facts which the jury concludes amounted to perjury, now a felony by statute, the lesser common law misdemeanor under the above statute is merged therein so as to prevent the imposition of a separate penalty on the latter." Ibid.

It is concluded that the second count of the informations, which attempts to apply the fifteen-year penalty of § 54-117 to facts falling within the scope of the perjury statute, carrying a five-year penalty, cannot be maintained simply by denominating the

offense as obstructing justice. This conclusion makes it unnecessary to discuss other claims raised by the defendants. The motions to quash the second count of the informations are granted.

### III

The state concedes that the third count in No. 8375, State v. Robert A. Guiher, claiming a violation of General Statutes § 6-76, which makes it a misdemeanor to disturb the surroundings of a dead body, is barred by the Statute of Limitations. General Statutes § 54-193. Since the offense occurred more than one year before the information was filed, the prosecution is prohibited, and the motion to quash this count of the information is granted.

In view of the action of the court in granting the motions to quash the second count, the motions to elect between the first and second counts, which were argued with the other motions, are denied as superfluous.

In summary, the court has denied the motions to quash the first count of the informations but has granted the motions to quash the second count. It has also granted the motion to quash the third count of the information in No. 8375, State v. Robert A. Guiher. The motions to require an election are denied.