## STATE OF CONNECTICUT *v.* ANONYMOUS (1986–1)*

### SUPERIOR COURT

BARALL, J. The state has applied for an arrest warrant charging the accused with the murder of an unborn but viable fetus. That application requires this court to decide whether an unborn but viable fetus is a "human being" within the meaning of the Connecticut statutes defining murder.

When an application for an arrest warrant is submitted to the court, it is the constitutional and statutory obligation of the court to examine the application together with the accompanying sworn affidavits to determine if there is probable cause to believe (1) that a crime has been committed, and (2) that the person to be arrested committed the crime. U.S. Const., amends. IV and XIV; Conn. Const., art. I, § 7; *State v. Heinz,* 193 Conn. 612, 617, 480 A.2d 452 (1984). In order to fulfill that obligation, the court reads the affidavit to determine what the facts are and then exa-

---

* Thus entitled in view of the spirit and intent of § 54-142a.

mines the statute to see if the facts support a finding of probable cause as to each element of the crime charged.

The affidavits submitted by the state in this case support the following probable cause findings: (1) The accused shot the victim, who died as a result of the gunshot wounds; (2) the accused intended to shoot either the victim or the man accompanying her; (3) the victim was about six months pregnant at the time of the shooting; (4) the victim's unborn child was a viable and healthy child who at the time his mother was shot was capable of sustaining life outside his mother's womb; (5) the cause of the child's death was the loss of circulation of blood from the mother; (6) had the child been removed from the womb prior to the loss of circulation of blood, he could have survived on his own; and (7) the child was stillborn.

In this case, the defendant is accused of murder pursuant to General Statutes § 53a-54a (a). This statute provides that "[a] person is guilty of murder when, with intent to cause the death of another person . . . . he causes the death of such person or of a third person." Person is defined for the purpose of the homicide statutes as a "human being." General Statutes § 53a-3 (1). There is no explicit definition of the term "human being" in the General Statutes.

Since there is probable cause for all other requisite elements of the crime of murder, the only issue left for the court to decide is whether an unborn but viable fetus is a "human being" within the meaning of the Connecticut statutes defining murder. This court concludes that the legislature did not intend such a meaning and that if this court were to construe the statute to the contrary, it would exceed its judicial power and deny the accused due process of law. In arriving at that conclusion, the court is not saying what the law ought to be,

but what the law is. What the law ought to be in this area is left to the good judgment of the legislature.

The reasons for the court's conclusions lie in an analysis of the legislative history of Connecticut's penal code, an analysis of the statutory scheme of Connecticut's homicide laws, an examination of the common law of murder that preceded the statutes, an examination of the constitutional requirement that people be given notice that their actions will violate specific criminal laws and an examination of the relationship of the legislature to the court in the enactment of criminal laws.

I

### LEGISLATIVE HISTORY

Let us first examine the legislative history of Connecticut's penal code. Prior to October 1, 1971, the criminal law of Connecticut included both statutory and common law offenses. *State* v. *Salafia,* 29 Conn. Sup. 305, 312, 284 A.2d 576 (1971), citing *State* v. *Schleifer,* 99 Conn. 432, 443, 121 A. 805 (1923), and *State* v. *Danforth,* 3 Conn. 112 (1819); see also *State* v. *Blyden,* 165 Conn. 522, 529, 338 A.2d 484 (1973). On that date, the new criminal code became effective. See General Statutes § 53a-1 et seq. Unlike the previous statutory scheme, which only legislated penalties while relying on the common law to define the elements of the crime; see General Statutes (Rev. to 1968) § 54-117, repealed by Public Acts 1969, No. 828, § 214, effective October 1, 1971; the new code both defines the elements of the crime with which an accused is charged and mandates the penalties. General Statutes § 53a-54a.

The murder section of the new penal code was "based partly on the New York Revised Penal Law and partly on the Model Penal Code . . . ." General Statutes Ann. § 53a-45a, Commission Comment—1971 (West 1985).

The Model Penal Code defines criminal homicide as "purposely, knowingly, recklessly or negligently caus[ing] the death of another human being." Model Penal Code § 210.1 (1), 10 U.L.A. 532 (1974). The Code defines "human being" as "a person who has been born and is alive." Id., § 210.0 (1).

Although the New York Revised Penal Law defines homicide as conduct causing "the death of a person or an unborn child"; New York Penal Law § 125.00 (McKinney 1975); it limits the word "person" to mean "a human being who has been born and is alive." New York Penal Law § 125.05 (1) (McKinney 1975).

It is obvious that neither the word "person" nor the words "human being" would include an unborn fetus under the New York Revised Penal Code or the Model Penal Code.

In addition to the fact that the codes from which our Connecticut law was drawn limit the words "human being" to those who have been born alive, Connecticut's statutory scheme of homicide supports the position that Connecticut's legislature did not intend to define a "human being" as an unborn but viable fetus.

## II

### STATUTORY SCHEME

What is meant by Connecticut's statutory scheme of homicide? Part IV of our penal code entitled "Homicide" provides criminal penalties for various acts which cause the death of a "person," not only murder. Part IV deals with murder, manslaughter and criminally negligent homicide in separate sections. In each of these separate sections the word "person" meaning "human being" is used. For example, "[a] person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person . . . ." General Statutes § 53a-58. If an unborn viable fetus was to be considered a "human being"

under this section of the penal code then, conceivably, a pregnant woman, who smokes and drinks alcoholic beverages during pregnancy and thereby causes the death of her unborn, might be charged with negligent homicide. One would not expect the legislature to have intended such a result unless it said so explicitly.

In deducing the legislative intent in terms of legislative scheme, the court must also recognize that at the time the legislature enacted the new penal code in 1971, there was a criminal abortion statute, previously enacted in 1949, which contained specific language dealing with an "unborn child" and that language was not carried over into the new penal code, but retained only in the abortion statute. General Statutes § 53-29. The fact that the legislature would refer to an "unborn child" in one statute and not in the other is strongly persuasive that the legislature did not intend an "unborn child" to be a "person" in the murder statute.

### III

### COMMON LAW

It is also assumed that the legislature, in enacting the murder statute, was familiar with the general rules of common law on that subject when it enacted the new penal code. "The rule of statutory construction is that '[a] statute should not be construed as altering the common law rule, farther than the words of the statute import, and should not be construed as making any innovation upon the common law which the statute does not fairly express.' " *State* v. *Kish,* 186 Conn. 757, 764, 443 A.2d 1274 (1982).

It is well settled that the common law, as far back as 1648 (3 Coke, Institutes *58 (1648)), held that an unborn fetus, viable or otherwise, could not be the subject of homicide. See *Keeler* v. *Superior Court,* 2 Cal. 3d 619, 626, 470 P.2d 617, 87 Cal. Rptr. 481, (1970); 40 C.J.S., Homicide § 2 (b), p. 824; annot.,

Homicide Based on Killing of Unborn Child, 40 A.L.R.3d 444. Accordingly, almost every state court that has had a homicide statute, similar to Connecticut's, that did not define "human being" explicitly to include a fetus have held the words "person" or "human being" would not include the unborn child or fetus. See *Keeler* v. *Superior Court,* supra; *State* v. *Gonzalez,* 467 So. 2d 723 (Fla. App. 1985); *People* v. *Greer,* 79 Ill. 2d 103, 402 N.E.2d 203 (1980); *Hollis* v. *Commonwealth,* 652 S.W.2d 61 (Ky. 1983); *State* v. *Brown,* 378 So. 2d 916 (La. 1979); *State* v. *Guthrie,* 97 Mich. App. 226, 293 N.W.2d 775 (1980); *State* v. *State in the Interest of A. W. S.,* 182 N.J. Super. 278, 440 A.2d 1144 (1981); *State* v. *Larsen,* 578 P.2d 1280 (Utah 1978); *State ex rel. Atkinson* v. *Wilson,* 332 S.E.2d 807 (W.Va. 1984).

Only two state courts have held to the contrary, but did so prospectively, not for the case before them. *Commonwealth* v. *Cass,* 392 Mass. 799, 467 N.E.2d 1324 (1984); *State* v. *Horne,* 282 S.C. 444, 319 S.E.2d 703 (1984). These minority states are common law crime states—that is the legislature in both states merely codified existing criminal common law by prescribing penalties for existing common law crime. Both courts recognized that the preexisting common law did not recognize the killing of an unborn child as "homicide," but felt that they had the authority to change the law prospectively to conform with modern medical technology. The Massachusetts court noted that courts in "code jurisdictions" like Connecticut may be "unable to develop common law rules of criminal law because the Legislature has occupied the entire field of criminal law." *Commonwealth* v. *Cass,* supra, 803.

## IV

### DUE PROCESS

Even the two minority jurisdictions have agreed with majority jurisdictions that to apply a new interpretation

of the words "human being" retroactively to include a viable but unborn fetus would violate constitutional principles that prohibit retroactive criminal laws. "An unpredictable judicial decision which has the effect, as here, of increasing possible available punishment is objectionable, and may raise constitutional issues." *Commonwealth* v. *Cass,* supra, 808. "The criminal law whether declared by the courts or enacted by the legislature cannot be applied retroactively. *Bouie* v. *City of Columbia,* 378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964)." *State* v. *Horne,* supra, 447.

As the California court stated in the *Keeler* case, "[w]hen a new penal statute is applied retrospectively to make punishable an act which was not criminal at the time it was performed, the defendant has been given no advance notice consistent with due process. And precisely the same effect occurs when such an act is made punishable under a preexisting statute but by means of an unforeseeable *judicial* enlargement thereof." (Emphasis in original.) *Keeler* v. *Superior Court,* supra, 634.

Under either the majority or minority view, to charge the accused with the murder of the unborn but viable fetus would violate the accused's due process rights.

## V

### JUDICIAL POWER

Could this court change the law prospectively as the Massachusetts and South Carolina courts did? Aside from the fact that Connecticut is primarily a code state and that even the Massachusetts court recognized that what it did could not be done in a code state, the modern view is that the ability of the courts to create new common law has diminished. " 'It was only natural that judges should create crimes from general principles in medieval England, because such legislature as there was sat only infrequently and legislation was scanty.

Today in the United States, as in modern England, the various legislatures meet regularly. The principal reason for common law crimes has therefore disappeared.' W. LaFave & A. Scott [Criminal Law (1972)]." *State ex rel. Atkinson* v. *Wilson,* supra, 807.

For this court to explore new fields of crime is foreign to modern concepts of justice and raises serious questions of separation of powers between it and the legislature. Therefore, any redefining of the word "person" must be left to the legislature, which has the primary authority to define crimes. There are a number of states that have enacted feticide statutes.

It should be noted that this decision relates only to the crime of murder and not to tort law. American courts which have extended the benefits of tort law to fetuses have also, in the absence of specifically inclusive language, uniformly refused to change "the born-alive rule in criminal cases . . . ." *People* v. *Greer,* supra, 115. The rationale is that "[d]iffering objectives and considerations in tort and criminal law foster the development of different principles governing the same factual situation." Id., citing W. Prosser, Torts (4th Ed. 1971) § 2; W. LaFave & A. Scott, supra, § 3, pp. 11–13.

Accordingly, the application for an arrest warrant is denied.